UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FIRST NBC BANK HOLDING COMPANY** | * | CIVIL ACTION NO. 2:19-cv-10341 |
| | * | SECTION: "D" (3) |
| | * | |
| v. | | |
| | * | |
| **ASHTON RYAN, JR., ET AL** | | |
| * * * | | |

GOVERNMENT'S MEMORANDUM IN
SUPPORT OF MOTION TO INTERVENE AND STAY

    The Attorney for United States of America, through the undersigned Assistant United States Attorneys (the "United States" or the "Government"), moves this Honorable Court to intervene under Rule 24 of the Federal Rules of Civil Procedure for the limited purpose of staying all discovery in the instant proceedings until the conclusion of an ongoing federal criminal investigation involving, among others, Gregory St. Angelo, other First NBC Bank officers, First NBC employees, and the same facts, evidence, witnesses, and circumstances at issue in this civil matter. In support of its request, the Government contends:

**I.    BACKGROUND**

    The United States is in the midst of an ongoing criminal investigation involving First NBC Bank, as evidenced by the publicly filed charges against three individuals, Jeffrey Dunlap ("Dunlap"), Gregory St. Angelo ("St. Angelo"), and Kenneth Charity ("Charity"). *See* Exhibit A, (Bill of Information in *United States v. Jeffrey Dunlap*, Criminal No. 18-99 "B" (E.D. La. May 14, 2018) (Lemelle, J.) (the "Dunlap Bill of Information"); Bill of Information in *United States v. Gregory St. Angelo*, Criminal No. 19-55 "J" (E.D. La. March 22, 2019) (Barbier, J.) (the "St.

Angelo Bill of Information"); Bill of Information in *United States v. Kenneth Charity*, Criminal No. 19-90 "I" (E.D. La. May 14, 2018) (Africk, J.) (the "Charity Bill of Information")) (collectively, the "Bills of Information" and the "Charged Defendants"). Two of the defendants charged in the Bills of Information, Dunlap and St. Angelo, have already pleaded guilty. Charity is set to plead guilty on July 30, 2019.

All three Bills of Information allege that the Charged Defendants conspired with Bank President A and other First NBC Bank employees, including Bank Officer B, to defraud First NBC Bank. The Bills of Information allege the Charged Defendants and certain First NBC Bank employees engaged in the following conduct, among other things:

- Disguising the true financial status of the Charged Defendants, who had, or whose associated entities had, significant borrowing relationships at the bank;

- Concealing the accurate performance of loans to the Charged Defendants or their associated entities;

- Misrepresenting the purpose of the loans to the Charged Defendants or their associated entities;

- Providing false or inaccurate personal financial statements about the assets and liabilities of the Charged Defendants;

- Unjustly enriching certain First NBC Bank Officers and employees; and

- Creating false tax credit investments.

*See* Ex. A (Bills of Information). The Bills of Information allege that these false and fraudulent actions were memorialized in the bank's books and records. *Id.*[1] The Bills of Information also allege the bank fraud conspiracies occurred at a time unknown but prior to 2006 and continuing through April 2017. *See* Ex. A (Bills of Information).[2]

---

[1] *See* Dunlap Bill of Information at ¶ A.13; St. Angelo Bill of Information at ¶¶ 12, 17; Charity Bill of Information at ¶ A.13.
[2] The Dunlap Bill of Information alleges the bank fraud conspiracy began at a time unknown but prior to July 2009 and through in or around December 2016. *See* Dunlap Bill of Information at 3.

The Government's investigation is ongoing, and because of grand jury secrecy rules, facts beyond what has been publicly alleged in the Bills of Information and other public filings, cannot be disclosed. However, should other borrowers, First NBC Bank officers, directors, or employees be charged, the Government's proof will involve First NBC Bank internal records, First NBC Bank public filings, the records of its internal and external auditors, bank examination records, and testimony of First NBC Bank employees, officers, directors, auditors and examiners.

The Complaint in the instant matter covers the same time frame and operative facts, names two of the Charged Defendants, Dunlap and St. Angelo, involves testimony from the same witnesses, and alleges the same type of fraud against the bank. *Compare* Ex. A (Bills of Information) to Complaint.

Ashton Ryan and William Burnell have joined St. Angelo's Motion to Stay the entire proceedings. Rec. Docs. 16, 25, 30. Marc Bell and the Ernst and Young LLP ("EY") defendants take no position on a stay, and Mary Beth Verdigets does not oppose it. Rec. Docs. 17, 21. Bell, EY, and Verdigets make a limited objection to the stay, requesting the stay allow them to file motions to dismiss and compel arbitration, which do not require discovery. *Id.* These limited objections to St. Angelo's Motion to Stay do not affect the Government's Motion for a stay of discovery. Plaintiff opposes a stay of the entire litigation and discovery. The other defendants do not oppose the Government's request to stay discovery.[3]

The Government has a significant interest in intervening in this case to stay discovery in its entirety to manage the scope and manner of discovery in the criminal case and to protect the integrity and truth-seeking function of the criminal proceeding. The Fifth Circuit and district courts have created a six-factor test based on *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), that

---

[3] The Government's request for a stay of discovery would not prevent the filing of responsive pleadings or motions to dismiss.

guides trial courts in determining whether a stay is warranted pending the outcome of a criminal proceeding. As discussed below, all six factors weigh toward granting a complete stay of discovery in the civil case. Prejudice to the Plaintiffs will be minimal because it is unlikely that the Plaintiffs will be able to obtain testimony or documents from the parties, most of whom are likely to invoke their Fifth Amendment Privilege against self-incrimination. *See* Rec. Docs. 16, 25, 30. Thus, Plaintiffs would not be able to proceed to trial anyway, until the criminal proceeding is complete. In contrast, the criminal investigation will be prejudiced and its truth-seeking mission thwarted should the Court permit the liberal civil discovery process to begin.

## II.    ARGUMENT AND AUTHORITIES

### A.    The Court Should Grant the Government's Motion to Intervene.

Rule 24 provides for intervention as "of right" and "permissive" intervention. Intervention as of right "must" be granted when the movant timely files a motion "claim[ing] an interest relating to the property or transaction which is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Permissive intervention may be granted where the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). The Government's Motion satisfies both of these provisions.

The Court should grant leave to intervene as of right because the Government has an interest in the civil action that is not adequately protected by the parties in this case. Specifically, the United States has a strong law enforcement interest in managing the scope and manner of discovery in the criminal case, protecting the integrity of the criminal proceedings and the truth-seeking process, and preventing the civil discovery process from impairing or influencing the evidence and testimony that is expected to be offered in the criminal case. *See, e.g.*, *SEC v.*

4

*Mutuals.com, Inc.*, No. 3:03-CV-2912-D, 2004 WL 1629929, at *1-2 (N.D. Tex. July 20, 2004) (granting U.S. Attorney leave to intervene as of right to stay discovery in SEC enforcement action in deference to related criminal case based on law enforcement interest, and inadequacy of SEC to protect U.S. Attorney's interest given SEC's obligation to follow civil discovery rules).

Alternatively, the Court should grant permissive intervention because the civil case and the criminal case share common questions of law and fact. The two cases arise out of the same scheme (bank fraud and intentional misconduct by First NBC Bank officers, employees and borrowers) involving the same lending relationships, banking practices, auditors, and witnesses to these events. Courts routinely allow the Government to seek a stay of discovery in civil cases until the resolution of related criminal cases because "the similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." *Dominguez v. Hartford Fin. Servs. Grp., Inc.,* 530 F. Supp.2d 902, 906-07 (S.D. Tex. 2008); *see also Waste Management of Louisiana, LLC v. River Birch, Inc.*, Civil Action No. 11–24052012, 2012 WL 520660, at *4 (E.D. La. Feb. 15, 2012); *see also Southeast Recovery Group, LLC v. BP America, Inc.*, 278 F.R.D. 162, 168 (E.D. La. 2012).

Intervention is especially justified where, as here, the Government seeks to intervene to stay discovery to avoid disrupting the progress of a criminal investigation. *Warren v. Geller,* No. CIV. 11-2282, 2013 WL 1455688, at *9 (E.D. La. Apr. 9, 2013) (granting Government's motion to intervene and stay where civil discovery could disrupt criminal investigation); *see also SEC v. Stanford International Bank No.* 3:09-CV-298-N, 2010 WL 11492395, at *3 (N.D. Tex. Jan. 5, 2010) (granting Government's motion to intervene and stay discovery because the balance of interests weighed in favor of staying discovery pending resolution of the parallel criminal case). Accordingly, the Court should grant the Government's Motion to Intervene.

### B. Courts Routinely Grant Stays of Civil Proceedings Pending the Outcome of Criminal Investigations.

This Court has the authority to stay civil proceedings pending the outcome of an ongoing criminal investigation. *See, e.g. United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *Waste Management of Louisiana*, WL 520660, at *3; *Southeast Recovery Group*, 278 F.R.D. at 165-168; *S.E.C. v. Offill*, Civil Action No. 3:07-CV-1643-D, 2008 WL 958072, at *2 (N.D. Tex. Apr. 9, 2008); *Dominguez*, 530 F. Supp. 2d at 905. The seminal case on this issue in this circuit is *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), wherein the Government sought a stay of discovery from individual plaintiffs who filed a tax refund case. In *Campbell*, Judge Wisdom outlined the following roadmap for the trial courts considering whether to grant a stay civil discovery proceedings pending the result of an ongoing criminal investigation or prosecution:

> There is a clearcut distinction between private interests in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. [B]ut these distinctions do not mean that a civil action and a criminal action involving the same parties and some of the same issues are so unrelated that in determining good cause for discovery in the civil suit, a determination that requires the weighing of effects, the trial judge in the civil proceeding should ignore the effect discovery would have on a criminal proceeding that is pending or just about to be brought. The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

*Id.* at 487. *Campbell* advised trial courts to be sensitive to the differences of the policies and objectives of the "well-stocked battery of discovery procedures" of the Federal Rules of Civil Procedure and the "far more restrictive" rules governing criminal procedure. *Id.* Otherwise, defendants in a criminal proceeding may be able to access information through the civil discovery that they would not have been able to receive under the more stringent criminal discovery rules. *Id.* at n. 12. Courts have repeatedly stressed this concern when considering whether to grant a stay.

6

*Campbell*, 307 F.2d at 487; *Southeast Recovery Group*, 278 F.R.D. at 167; *Dominguez*, 530 F. Supp. 2d at 907-08; *S.E.C. v. Mutuals.com, Inc.*, No. Civ.A.3:03-CV-2912-D, 2004 WL 1629929, *2 (N.D. Tex. July 20, 2004); *Agran v. City of New York*, No. 95 CIV. 2170 (JFK), 1996 WL 263023, at *2 (S.D.N.Y. May 16, 1996); *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992); *In re Ivan F. Boesky Secs. Litig.*, 128 F.R.D. 47, 50 & n.2 (S.D.N.Y. 1989).

District courts within the Fifth Circuit have considered several factors in determining whether a stay should be granted, including: "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest." *Waste Management*, 2012 WL 520660, at *3-4; *Southeast Recovery Group*, 278 F.R.D. at 166-67; *Dominguez*, 530 F. Supp. 2d at 905; *Mutuals.com*, 2004 WL 1629929, at *3; *State Farm Lloyds v. Wood*, Civil Action No. H-06-503, 2006 WL 3691115, at *1-2 (S.D. Tex. Dec. 12, 2006); *Heller Healthcare Fin., Inc. v. Boyes*, No. CIV.A. 300CV1335D, 2002 WL 1558337, at *3-4 (N.D. Tex. July 15, 2002).

### C. The Government Has Demonstrated the Special Circumstances and Prejudice Necessary to Support a Stay in This Matter.

As set forth below, all six factors weigh in favor of the Government's request to intervene and stay this civil case.

#### 1. The facts of the criminal investigation are similar, if not identical, to the facts of the civil case.

Courts are clear that the similarities in the facts and issues between the civil suit and the criminal matter must be compelling if not "the most important" factor in the analysis of whether

7

to grant a stay. *Waste Management,* 2012 WL 520660, at *4 (citing cases); *Dominguez,* 530 F. Supp. 2d at 907-08 ("the similarities of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay."); *Wood,* 2006 WL 3691115, at *2 (same); *Librado,* 2002 WL 31495988, *2 ("the most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues"). Here, there is a common nucleus of operative facts in both the civil and criminal matters. While grand jury secrecy rules prevent the Government from disclosing details of an ongoing criminal investigation, the United States has filed three Bills of Information concerning fraud at First NBC Bank. *See* Ex. A (Bills of Information). The information in the public record alleges that the Charged Defendants conspired with Bank President A, Bank Officer B, and other unnamed bank employees to defraud First NBC Bank and others including regulators, examiners, and investors. *See* Ex. A (Bills of Information). Those Bills of Information allege, generally, that the Charged Defendants, Bank Officer A, and others:

- Disguised the true financial status of the Charged Defendants, who had, or whose associated entities had, significant borrowing relationships at the bank;

- Concealed the accurate performance of loans to the Charged Defendants, or their associated entities;

- Misrepresented the purpose of the loans to the Charged Defendants or their associated entities;

- Provided false or inaccurate personal financial statements about the assets and liabilities of the Charged Defendants;

- Unjustly enriched certain First NBC Bank Officers and employees; and

- Created false tax credit investments.

*See* Ex. A (Bills of Information). These fraudulent actions would have necessarily been communicated to the First NBC Bank Holding Company, as they were part of First NBC Bank's

books and records.

In comparison, the Complaint alleges similar conduct to the conduct charged in the Bills of Information. The Complaint alleges the Officer Defendants engaged in intentional misconduct by, among other things, presenting "incomplete and inaccurate information," (Complaint at ¶¶ 9-11), engaging in "improper lending and investing activities," (Complaint at ¶ 9), making "material misrepresentations and omissions in financial statements" filed with regulators and conveyed to the board and bank employees (Complaint at ¶¶ 11, 288), "misstating the risk and position strengths associated with the Bank's . . . tax credit investments," (Complaint at ¶¶ 4, 51-52, 318, 324); leading the "Bank [to] invest in entities that did not qualify for tax credit status at all," (Complaint at ¶ 130); providing loans to "non-credit worthy borrowers" (Complaint at ¶¶ 10, 130); committing "knowing violation[s] of the law," (Complaint ¶¶ 11, 287, 319, 325, 333); and engaging in transactions designed to personally benefit them (Complaint at ¶¶ 79-80, 100, 130, 185, 287, 325, 333). Indeed, entire portions of the Complaint track the language of the St. Angelo Bill of Information and rely on allegations of self-dealing outlined in the Dunlap Bill of Information. *See* (Complaint at ¶¶ 184-90, 387-306).

The similar allegations in the Complaint counsel strongly in favor of a stay. *See, e.g.*, *Waste Management,* 2012 WL 520660, at *4 (noting that the similarities of the facts, issues, and conduct weigh heavily in favor of a stay); *Southeast Recovery Group*, 278 F.R.D. at 168; *Dominguez,* 530 F. Supp. 2d at 907-08 (granting motion to stay civil proceedings in part because of the "substantial overlap" of the issues in the civil and criminal matters).

### 2. The criminal investigation is active and ongoing.

The second factor - the status of the criminal investigation - also supports a stay. While the criminal investigation has produced charges against the Charged Defendants, the investigation into potential criminal violations of other First NBC Bank officers, employees, and others has been

9

ongoing and is yet to result in other indictments. Courts, including the Fifth Circuit, are clear that the fact that a criminal investigation is still ongoing does not foreclose the availability of a stay of parallel civil proceedings. *See, e.g.*, *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1088-89 (5th Cir. 1979) (discovery stayed for three years during ongoing criminal investigation); *Waste Management*, 2012 WL 520660, at *3-6 (granting stay prior to indictment); *Mutuals.com*, 2004 WL 1629929, at *3 (noting that civil cases may be stayed where there is the possibility of a criminal charge); *Brumfield v. Shelton*, 727 F. Supp. 282, 284 (E.D.La. 1989) (granting motion to stay where civil litigant was involved in criminal investigation). Indeed, grounds for granting a stay prior to an indictment are "often strongest before an indictment is handed down" because it is necessary to "protect an ongoing criminal investigation[] and pending grand jury hearings." *See Southeast Recovery Group*, 278 F.R.D.162, 167-68 (E.D. La. 2012) (citation omitted).

### 3. The prejudice to plaintiffs based on a delay of the civil proceedings will not be substantial.

While the Plaintiff has a financial incentive to proceed expeditiously in this matter, any delay caused by a stay will not operate as a substantial prejudice. The civil case – filed in May of 2019 – is in its infancy, and discovery has not yet begun. No document requests have been served, and no depositions have been noticed or taken. Once any criminal trial ends, civil discovery could be conducted, as necessary. *See, e.g., SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) ("so far as preparation for trial in the civil action is concerned, appropriate opportunities for discovery can be allowed when the stay is lifted"). In contrast, the criminal investigation has been active for quite some time and three individuals have already been charged. *See* Ex. A (Bills of Information). Further, the Plaintiff may actually benefit from a stay because Plaintiff would be able to use information gathered during the criminal investigation, resolve previously disputed issues, and even facilitate settlement, avoiding costly litigation and trial. *See Waste Management*, 2012 WL

520660, at *4. At the very least, a stay in this case will not result in the loss of any evidence, as the Government has been gathering evidence in its ongoing investigation.

### 4. The interests of the defendants support the Government's request for a stay.

The fourth factor - the interest of the civil defendants, one of whom, St. Angelo, is a Charged Defendant - cuts in favor of the United States' request for a stay. William Burnell and Ashton Ryan have already stated that they plan to invoke their Fifth Amendment privilege against self-incrimination to prevent document discovery, depositions, and interrogatories. Both have argued that they are the Bank President A and Bank Officer B named in the Bills of Information and are subjects of the grand jury investigation. *See* Rec. Doc. 25 at 3-4 ("The grand jury is examining and investigating the activities of the FNBC, and Mr. Ryan."); Rec. Doc. 30 at 6 ("Mr. St. Angelo [] recently pleaded guilty to participating in a scheme to commit bank fraud allegedly involving Mr. Burnell (Bank Officer B) and Mr. Ryan (Bank President A)"). Ashton Ryan has stated that he has already asserted his right to remain silent in other related civil proceedings and plans to assert that right here. Rec. Doc. 25 at 3. He has characterized his situation as placing him in the grip of a "constitutional dilemma – either he exercises his privilege under the Fifth Amendment . . . and be unable to defend himself in this [] civil proceeding . . . or waive his [Fifth Amendment right]" and damage his potential defense to any criminal proceeding. *Id.* at 3-4, 9. Similarly, William Burnell has stated he would be "irreparably" prejudiced if a stay were not granted because he would be forced to choose between "invoking his Fifth Amendment rights or jeopardize his defense in the civil suit." Rec. Doc. 30 at 7-8. St. Angelo, who has already been

charged with criminal wrongdoing and pleaded guilty, still has criminal exposure[4] and will invoke his Fifth Amendment right. *See* Rec. Doc. 16-1 at 8. A stay of this civil case would allow those parties to properly address any criminal culpability first, prior to any civil liability. *See Waste Management,* 2012 WL 520660, at *5 (noting that stay was appropriate so that civil defendants may decide how to handle their criminal exposure).

While Marc Bell and EY have stated they "of course are not parties to the criminal proceeding" (Rec. Doc. 21 at 3, ¶ 3) and take no position on a stay of this proceeding, a stay would benefit them in allowing them to address any potential exposure prior to the civil litigation moving forward. Further, it would assist them in narrowing any issues that may be resolved during the course of the criminal investigation. For example, if the criminal investigation were to establish that First NBC Bank employees submitted fraudulent information to Marc Bell and EY, that would affect their defenses in connection with this civil proceeding and facilitate settlement. This reasoning would also apply to Mary Beth Verdigets and other First NBC Bank employees (i.e., Officer Does 1-20).

### 5. The public's interests, as well as this Court's interests, weigh in favor of a stay.

As to the fifth and sixth factors, the role of the United States as prosecutor of federal crimes is designed to serve not only the private victims of the crime, but also the general public. In that sense, it can be fairly stated that "the public interest in [a] criminal case is entitled to precedence over . . . civil litiga[tion]." *In re Ivan F. Boesky Securities Litig.*, 128 F.R.D. 47, 49 (S.D.N.Y.

---

[4] A defendant who has pleaded guilty retains his Fifth Amendment right until sentencing has been imposed. *See Mitchell v. United States*, 526 U.S. 314, 326 (1999) (the right extinguishes once "the sentence has been fixed and the judgment of conviction has been final"); *United States v. Aviles*, 749 F. App'x 263, 267 (5th Cir. 2018) ("The privilege remains in effect if the defendant has a 'legitimate fear of incurring additional criminal liability from testifying' due to impending sentencing."); *United States v. Lyons*, 703 F.2d 815, 818 n.2 (5th Cir. 1983) ("A guilty plea waives the privilege with respect to the specific charges to which a defendant pled guilty but not other crimes related to the same events.").

1989) (alteration not in original); *see Campbell*, 307 F.2d at 487 ("administrative policy gives priority to the public interest in law enforcement"). In this case, the public interest in law enforcement greatly outweighs any interest in resolving the civil action first or in a way that would jeopardize the criminal investigation.

First, allowing discovery to proceed in this case would damage the integrity of the criminal case by inhibiting the Government's ability to preserve the usefulness of its anticipated trial witnesses. *See, e.g.*, *In re WorldCom Sec. Litig.*, No. 02 CIV. 3288(DLC), 2002 WL 31729501, at *9 (S.D.N.Y. Dec. 5, 2003) (observing that U.S. Attorney "has a significant interest in preserving the usefulness of cooperating defendants as Government witnesses"). Whereas in a criminal case the United States can carefully interview and prepare anticipated trial witnesses in a manner designed to avoid educating those witnesses about matters outside of the scope of their personal knowledge to preserve their usefulness and avoid confusion, civil discovery affords litigants broad rights to examine non-party witnesses under oath about "any non-privileged matter that is relevant to any party's claim or defense" or, for good cause, "any matter relevant to the subject matter involved in the action[,]" even if the information would not be admissible at trial. Fed. R. Civ. P. 26(b)(1). For example, if a deposition question calls for speculation and objections are made, the party is permitted to ask the question and the witness is required to answer. Fed. R. Civ. P. 30(c)(2). The party is thus permitted to show the witness documents that the witness has never seen and ask questions about them, ask about meetings or conversations to which they were not privy, and inquire about other matters outside the scope of the witness's personal knowledge. This procedure upsets the truth-seeking process by polluting the witness's memory with information outside of his personal knowledge. Zealous advocacy on behalf of the Plaintiff and defendants in this civil matter contravenes the Government's compelling law enforcement interest in preserving,

13

untainted, the integrity of an anticipated trial witness's memory, perception, and personal knowledge necessary for the criminal proceedings.

Additionally, interests of judicial economy counsel in favor of a stay of civil proceedings pending the outcome of an ongoing criminal matter. Permitting the criminal matter to proceed may streamline this civil litigation, since there will be no need to make rulings on evidentiary or discovery issues in the civil case which may be disposed of by the criminal matter. *See, e.g.*, *Waste Management,* 2012 WL 520660, at *5 (noting that stay of civil case was warranted because criminal matter may streamline the civil case). The "conviction of a civil defendant as a result of the entry of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil case and promote settlement of civil litigation not only by that defendant but also by co-defendants who do not face criminal charges." *Alcala v. Texas Webb County*, 625 F. Supp. 2d 391, 406 (S.D. Tex. 2009). If a stay is not granted, it is almost certain that duplicative legal findings would occur. With a stay, collateral estoppel or res judicata could narrow some or all of the overlapping issues and prevent inconsistent rulings. *U.S. v. Acadiana Cardiology, LLC*, Civil Action No. 04-732, 2014 WL 1320157, at *3 (W.D. La. 2014) ("It is well established that a prior criminal conviction may work [as] estoppel . . . in a subsequent civil proceeding.").

### III.   CONCLUSION

For the reasons stated in this Memorandum, grounded in well-established Fifth Circuit law, the United States respectfully requests that this Court grant its Motion to Intervene and Stay discovery in this civil proceeding until the conclusion of the parallel criminal matter.

Respectfully submitted,

MICHAEL M. SIMPSON
Attorney for the United States
Acting Under the Authority Conferred
by 28 U.S.C. § 515

*s/Sharan E. Lieberman*
SHARAN E. LIEBERMAN
NICHOLAS D. MOSES
MATTHEW R. PAYNE
J. RYAN MCLAREN
Assistant United States Attorneys
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3129
E-Mail: sharan.lieberman@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*s/ Sharan E. Lieberman*
SHARAN E. LIEBERMAN
Assistant United States Attorney