# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FIRST NBC BANK HOLDING COMPANY,** | **CIVIL ACTION** |
| **Plaintiff,** | **NO. 2:19-CV-10341 WBV/DMD** |
| **vs.** | **JUDGE WENDY B. VITTER** |
| **ASHTON J. RYAN, JR., MARY BETH VERDIGETS, WILLIAM J BURNELL, GREGORY ST. ANGELO, OFFICER DOES 1-20, ERNST & YOUNG LLP, MARK BELL, and AUDITOR DOES 1-20,** | **MAGISTRATE JUDGE DANA M. DOUGLAS** |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT MARY BETH VERDIGETS' MOTION TO
DISMISS THE COMPLAINT FOR RECOVERY OF DAMAGES**

00337859-1

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................ 1

II.  STATEMENT OF FACTS ....................................................................... 3

    A.  Background. ................................................................................... 3

    B.  The Committee's Claims. .............................................................. 6

III.  ARGUMENT AND CITATION OF AUTHORITY ............................ 7

    A.  The Committee Lacks Standing to Assert Any Claims Against Ms.
        Verdigets. ........................................................................................ 8

        i.  Under FIRREA, the FDIC Succeeds to All Rights of the Bank
            Shareholders upon the Closure of the Bank, Including All Direct
            and Derivative Claims ................................................................ 9

        ii.  Even if the Court Declines to Follow *Zucker* and the Plain
            Meaning of Section 1821(d)(2)(A), the Alleged Harm to FNBC is
            Dependent on and Inseparable from Harm to the Bank and
            Therefore the Claims Alleged are Derivative. ......................... 13

    B.  The Complaint Warrants Dismissal Because It Fails To Plead Facts That
        State A Plausible Claim Against Ms. Verdigets. .................................. 17

IV.  CONCLUSION ......................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Asar,*
   768 F. App'x 175 (5th Cir. 2019) ........................................................................19

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)........................................................................................8, 21

*Atkins v. Hibernia Corp.,*
   182 F.3d 320 (5th Cir. 1999) ...........................................................................13

*Barnes v. Harris,*
   783 F.3d 1185 (10th Cir. 2015) ............................................................... *passim*

*Barsky v. Andersen,*
   Civ. A. No. H-02-1922, 2005 U.S. Dist. LEXIS 32352 (S.D. Tex. Aug. 15,
   2005) ..................................................................................................................14

*Bauer v. Sweeny,*
   964 F.2d 305 (4th Cir. 1992) ............................................................................9

*In re Beach First Nat'l Bancshares,*
   702 F.3d 772 (4th Cir. 2012) ...............................................................10, 12, 14

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).........................................................................8, 17, 18, 21

*Carroll v. Fort James Corp.,*
   470 F.3d 1171 (5th Cir. 2006) ..........................................................................8

*Crocker v. FDIC,*
   826 F.2d 347 (5th Cir. 1987) ..........................................................................14

*FDIC v. Am. Cas. Co.,*
   998 F.2d 404 (7th Cir. 1993) ............................................................................9

*In re First NBC Bank Holding Company,*
   No. 17-bk-11213 (E.D. La. May 6, 2019) .........................................................2

*Ind. Elec. Workers' Pension Trust Fund Ibew v. Shaw Grp., Inc.,*
   537 F.3d 527 (5th Cir. 2008) .....................................................................18, 19

*Ingersoll v. W. Delta Oil Co.,*
   Civ. A. No. 01-1406 C/W 02-614, 2002 U.S. Dist. LEXIS 17249 (E.D. La.
   Sept. 12, 2002) .................................................................................................14

*Kinzer v. First NBC Bank Holding Co.*,
No. 2:16-cv-04243-KDE-JVM (E.D. La. May 5, 2016)................................4, 5, 20

*Languirand v. Lopez*,
18-CA-245 (La. App. 5 Cir. 12/12/18); 261 So. 3d 1054 .......................................16

*Levin v. Miller*,
763 F.3d 667 (7th Cir. 2014) .................................................................................12

*Lubin v. Skow*,
382 F. App'x. 866 (11th Cir. 2010) ..................................................................10, 16

*Owens v. Jastrow*,
789 F.3d 529 (5th Cir. 2015) .................................................................................18

*Pareto v. FDIC*,
139 F.3d 696 (9th Cir. 1998) ...................................................................................9

*Plaisance v. Schiller*,
Civ. A. No. H-17-3741, 2019 U.S. Dist. LEXIS 42073 (S.D. Tex. Mar. 14,
2019) .......................................................................................................................18

*United States ex rel. Rafizadeh v. Cont'l Common, Inc.*,
553 F.3d 869 (5th Cir. 2008) .................................................................................20

*Session Fixture Co. v. Pride Mktg. & Procurement*,
Civ. A. No. 16-9373, 2016 U.S. Dist. LEXIS 171807 (E.D. La. Dec. 13, 2016)...................13

*Sierra v. Halliburton Energy Servs.*,
Case No. 6:17-CV-01002, 2018 U.S. Dist. LEXIS 145921 (W.D. La. Aug. 27,
2018) .......................................................................................................................14

*In re SkyPort Glob. Commc'ns.*, Inc., Case No. 08-36737, Adv. No. 10-3150,
2011 Bankr. LEXIS 123 (Bankr. S.D. Tex. Jan. 13, 2011) ....................................14

*Smith v. Ryan, et al.*,
No. Case 2:16-cv-17001-KDE-JVM (E.D. La. Dec. 9, 2016)...................................5

*Whalen v. Carter*,
954 F.2d 1087 (5th Cir. 1992) ...............................................................................14

*Zucker v. Rodriguez*,
919 F.3d 649 (1st Cir. 2019) ........................................................................ *passim*

**Statutes**

12 U.S.C. § 1821(d)(2)(A) ............................................................................ *passim*

15 U.S.C. § 7241(a) ................................................................................................19

LA. REV. STAT. ANN. § 6:2(9) ...........................................................................................17

LA. REV. STAT. ANN. § 6:291 .......................................................................................7, 17

LA. REV. STAT. ANN. § 6:293(b) .....................................................................................17

**Other Authorities**

Fed. R. Civ. P. 8 ...............................................................................................................3

Fed. R. Civ. P. 9(b) ..............................................................................................3, 8, 20

Fed. R. Civ. P. 12(b)(1) ....................................................................................................1

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 7, 17

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant Mary Beth Verdigets moves to dismiss the Complaint for Recovery of Damages (the "Complaint" or "R.Doc. 1") filed by Plaintiff Official Committee of Unsecured Creditors of First NBC Bank Holding Company (the "Committee"). The Court should dismiss the Complaint because (i) the Committee lacks standing under the Financial Institution Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") to assert any claims that are based upon the closing of First NBC Bank (the "Bank"), and (ii) the Complaint also fails to state a claim upon which relief can be granted. Accordingly, Ms. Verdigets requests that her Motion be granted and that the Complaint be dismissed with prejudice.

## I.    INTRODUCTION

In this action, the Committee seeks to recover damages to First NBC Bank Holding Company ("FNBC") arising from the loss of its sole asset, the Bank, which was closed in April 2017. When the Bank closed, its capital stock was rendered valueless, and as a result FNBC voluntarily filed for bankruptcy shortly thereafter. The Committee, standing in the shoes of FNBC, now attempts to pursue claims arising out of the Bank's closure, seeking to recover for the loss of FNBC's investment in the Bank. Ironically, the Committee's claims are substantially the same as those FNBC previously opposed in earlier shareholder litigation and persuaded Judge Engelhardt to dismiss with prejudice. These claims fare no better the second time around.

The Complaint, in a futile attempt to craft a cognizable claim to recover for the loss of value of the Bank's stock, strings together a series of events that, in the Committee's telling, led to the Bank's closure and thus to FNBC's bankruptcy. The Committee makes sweeping allegations against Ms. Verdigets,[1] the former Chief Financial Officer ("CFO") and Executive Vice President

---

[1] The Complaint makes numerous unspecific allegations grouping together the "Officer Defendants," including Ashton J. Ryan, William J. Burnell, Officer Does 1-20, and Ms. Verdigets.

1

of FNBC and the Bank,[2] reciting the same conclusory statements about the Bank's investment strategy and accounting practices, and asserting the same vague, generalized allegations of breaches of fiduciary duty as in the prior shareholder litigation that Judge Engelhardt dismissed with prejudice.  In the prior shareholder litigation, these claims were asserted **_against_** FNBC and its former officers, and FNBC joined with Ms. Verdigets in filing a motion to dismiss the claims, which the court granted.  Now, standing in the shoes of FNBC, the Committee has flip-flopped and asserts virtually the same claims that it successfully urged the court to reject.[3]   These claims should be dismissed once again for the following reasons.

*First*, the Committee lacks standing to bring these claims because under FIRREA, the Federal Deposit Insurance Corporation (the "FDIC"), as receiver for the Bank, succeeds to **_all_** rights of a stockholder of the Bank, which includes any potential claims with respect to the Bank and the Bank's assets.  12 U.S.C. § 1821(d)(2)(A)(i).  In a decision from earlier this year, the First Circuit held that FIRREA's plain language vests the FDIC with **_all_** claims brought on behalf of a closed bank's parent or holding company, regardless of whether the claims are characterized as direct or derivative.   Moreover, even under the earlier line of cases addressing section 1821(d)(2)(A), which distinguished between direct and derivative claims, the Committee would still lack standing because all the claims it asserts are derivative, not direct claims under Louisiana law.  No matter how formulated or pled, the Committee's claims allege damages resulting from the Bank's demise, and the Committee has no standing to assert them.[4]

---

[2] FNBC and the Bank had nearly identical leadership.

[3] The United States Bankruptcy Court for the Eastern District of Louisiana granted the Committee derivative standing only to assert the putative claims belonging to FNBC's bankruptcy estate. *See* R. Doc. 563, *In re First NBC Bank Holding Company*, No. 17-bk-11213 (E.D. La. May 6, 2019) (ordering that the Committee's standing is only to assert claims of FNBC and its bankruptcy estate).

[4] While the FDIC succeeds to all rights of a stockholder of the Bank, including the right to assert claims, Ms. Verdigets disputes that **_any_** such claims would be viable or have merit.

*Second*, the Complaint should be dismissed as to Ms. Verdigets because it fails to set forth factual allegations sufficient to satisfy the pleading standards under Rules 8 and 9 of the Federal Rules of Civil Procedure.  Under Louisiana law, bank holding company officer liability arises ***only*** in the case of gross negligence, but the Complaint lacks any facts to support such a claim.  The Committee alleges no facts supporting a claim that Ms. Verdigets demonstrated a reckless disregard of (or carelessness amounting to indifference to) the best interests of FNBC, let alone any facts suggesting bad faith, intentional misconduct, knowing violations of law, or receipt of improper personal benefits by her, as required to state a claim for gross negligence.  Instead, the Committee relies upon the ongoing criminal investigations of the other Officer Defendants and Defendant Gregory St. Angelo in an effort, without any factual basis, to taint Ms. Verdigets.  This is plainly insufficient.  Shorn of the legal conclusions, innuendo, and hyperbole, the Complaint fails to set forth ***a single fact*** relating to any action or decision by Ms. Verdigets that could form the basis for a plausible claim for relief against her.

The Court should thus dismiss the Complaint in its entirety with prejudice as to Ms. Verdigets.

## II.     STATEMENT OF FACTS

### A. Background.

FNBC was a publicly-traded bank holding company organized under the laws of the State of Louisiana.  (R.Doc. 1 ¶¶ 2, 7, 25.)  The Bank was the wholly-owned subsidiary of FNBC and FNBC's primary asset.  (R.Doc. 1 ¶¶ 2, 42, 318.)  Ms. Verdigets served as the CFO and the Executive Vice President of FNBC from 2011 until September 16, 2016 and held parallel positions at the Bank.  (R.Doc. 1 ¶¶ 13, 28-31, 61.)  In September 2016, Ms. Verdigets was reassigned to the role of Treasurer.  (R.Doc. 1 ¶ 220.)

Through the end of 2015, the Bank was regarded as well-capitalized, and FNBC's results and corresponding market capitalization were positive.  (R.Doc. 1 ¶ 191.)  Bank holding companies like FNBC are established to support their subsidiary depository institutions by facilitating growth, including issuing debt, the proceeds of which are used to improve the subsidiary bank's capital position.  All or most of the capital FNBC raised was contributed to the Bank to support the Bank's business.  (R.Doc. 1 ¶ 8.)

In the years leading up to its closure, the Bank allegedly pursued questionable growth strategies, relying on non-traditional funding sources, allowing large loan concentrations to single borrowers, and employing liberal lending practices.  (R.Doc. 1 ¶¶ 61-67.)  The Bank also invested in short-term trade receivables and had significant tax credit investments.  (R.Doc. 1 ¶¶ 74-75.)  During an audit of FNBC's 2015 financial statements, FNBC's external auditors determined that the Bank had been incorrectly accounting for its tax credit investments.  (R.Doc. 1 ¶ 75.)  FNBC announced on April 8, 2016 that it would restate its consolidated financial statements for fiscal years 2011-2014, together with the interim quarterly periods for 2013, 2014, and 2015.  (R.Doc. 1 ¶¶ 54, 199-201.)

Shortly thereafter, on May 5, 2016, an FNBC shareholder filed a federal securities class action against FNBC and certain of its officers, including Ms. Verdigets, alleging fraud-based claims under the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.[5] Similar to the allegations now made by the Committee, the allegations in the securities class action concerned FNBC's tax credit investments and accounting, exposure to the oil and gas industry, and representations about its capital position.  In response, FNBC joined with Ms. Verdigets and

---

[5] *See* R.Doc. 1, *Kinzer v. First NBC Bank Holding Co.*, No. 2:16-cv-04243-KDE-JVM (E.D. La. May 5, 2016).  An amended complaint added Ernst & Young LLP as a defendant.  *See* R.Doc. 60, *Kinzer*, No. 2:16-cv-04243-KDE-JVM (E.D. La. Dec. 5, 2016).

moved for dismissal of the shareholder's claims, arguing in their joint memorandum that there was no basis for a fraud claim related to the financial results or accounting decisions.[6]  The district court subsequently granted the motion and dismissed the securities class action with prejudice.[7]

On August 25, 2016, FNBC issued restatements of its financial results for fiscal years 2013 and 2014 and for the first three quarters of fiscal year 2015, reflecting FNBC's deteriorating capital position and disclosing an auditor's report regarding its internal controls over financial reporting. (R.Doc. 1 ¶¶ 208-217.)  The Bank's financial decline continued.  The Bank was then forced to recognize an additional write-down attributable to its tax credit investments in March 2017. (R.Doc. 1 ¶ 232.)  Around the same time, external auditors also determined that the majority of the Bank's deferred tax assets should be charged off or recognized as significantly impaired. (R.Doc. 1 ¶ 239.)

On April 28, 2017, the Louisiana Office of Financial Institutions ("OFI") closed the Bank and appointed the FDIC as receiver.  (R.Doc. 1 ¶¶ 12, 37, 239.)  In a contemporaneous SEC filing, FNBC explained that because its "principal asset" was "the stock that it own[ed] in the Bank," the Bank's closure meant that FNBC no longer had any "material remaining tangible assets."  (R.Doc. 1 ¶ 235.[8])   A few days later, as a direct result of the Bank's closure, FNBC filed a voluntary

---

[6] *See* R.Doc.78, *Kinzer*, No. 2:16-cv-04243-KDE-JVM (E.D. La. Feb. 15, 2017).

[7] *See* R.Doc. 119, *Kinzer*, No. 2:16-cv-04243-KDE-JVM (E.D. La. May 11, 2017). A shareholder derivative action was also filed, purportedly on behalf of FNBC, asserting claims related to FNBC's tax-credit investment strategy, oil and gas exploration projects, and the restatements of its 2011-2015 financials at issue in the present action. *See* R.Doc. 1, *Smith v. Ryan, et al*., No. Case 2:16-cv-17001-KDE-JVM (E.D. La. Dec. 9, 2016).  The derivative action was stayed following FNBC's voluntary petition for bankruptcy relief pursuant to Bankruptcy Code Section 362(a) on May 11, 2017.

[8] Paragraph 235 of the Complaint incorrectly states that the Bank was closed on April 18, 2017, not April 28, 2017. This appears to be a typographical error as the correct April 28, 2017 date appears elsewhere in the Complaint.  (*See* R.Doc. 1 ¶¶ 12, 37.)

petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Court").  (R.Doc. 1 ¶¶ 12, 25, 235, 240, 320.)

FNBC's amended Chapter 11 Plan of Reorganization is pending, and the Bankruptcy Court granted the Committee standing to investigate and pursue claims for the benefit of FNBC's bankruptcy estate.  (R.Doc. 1 ¶ 26; *see also supra*, fn. 3).

### B.  The Committee's Claims.

The Committee, standing in the shoes of the same holding company that joined Ms. Verdigets in successfully defeating the securities class action, now asserts claims for breach of fiduciary duty and waste of corporate assets based upon the same basic factual allegations made in the earlier litigation against the Officer Defendants (Counts I-III).  The Committee's claims against the Officer Defendants are all predicated on alleged misconduct and mismanagement at the Bank level.  For example, the Committee asserts that the Officer Defendants failed to provide accurate and complete information to the FNBC Board of Directors (the "FNBC Board") about the Bank's poor internal controls and purported mismanagement, failed to protect FNBC's investment by ensuring proper management of the Bank, and failed to disclose that FNBC's profitability was overstated and its risks were understated because of Bank investments and lending practices.  (*See, e.g.*, R.Doc. 1 ¶¶ 4-6, 11-12, 60-75, 90, 324.)  Additionally, the Committee alleges that Defendants Ashton J. Ryan, William J. Burnell, and Gregory St. Angelo—but, tellingly, ***not*** Ms. Verdigets—conspired to fraudulently obtain money from the Bank and to conceal their fraud and the Bank's true financial condition from FNBC (Count IV).  (R.Doc. 1 ¶¶

185, 187, 336-340.)  The Complaint also includes Counts for breach of contract and accounting malpractice against the Auditor Defendants (Counts V-VI).[9]

The motion to dismiss filed by Ms. Verdigets is one of several motions before the Court for decision.  Also pending before the Court are two motions to intervene (one filed by the Department of Justice and one by the FDIC), four motions to stay these proceedings (filed separately by the FDIC, and by Defendants Gregory St. Angelo, Ashton J. Ryan, and William J. Burnell) and one motion to compel arbitration (filed by Defendants Ernst & Young LLP and Mark Bell). [10]  None of these other motions have any bearing, however, on whether the Committee's Complaint against Ms. Verdigets should be dismissed.  Because Ms. Verdigets does not belong in this action, the Court can and should decide Ms. Verdigets' Motion without further delay.

## III.   ARGUMENT AND CITATION OF AUTHORITY

The Court should dismiss the Complaint as to Ms. Verdigets for failure to state a claim upon which relief can be granted because: (i) the Committee lacks standing under FIRREA to assert the claims in its Complaint; and (ii) the Complaint fails to allege a claim against Ms. Verdigets under LA. REV. STAT. ANN. § 6:291, which codifies the standard of care for bank holding company officers.

A complaint warrants dismissal where the plaintiff has failed to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss on these grounds, the Court should disregard legal conclusions and focus only on the factual allegations to determine if a claim has been stated.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v.*

---

[9] The Auditor Defendants include Ernst & Young LLP, Mark Bell, and Auditor Does 1-20.

[10] The FDIC's motion to intervene is premised on the proposition that it is the "owner of the claims asserted by the Committee" based on section 1821(d)(2)(A) and the cases interpreting the same, which is consistent with Ms. Verdigets' position that the FDIC succeeded to all rights of the Bank with respect to the Bank and its assets.  *See* R.Doc. 75.

*Iqbal*, 556 U.S. 662 (2009).  Stripped of legal conclusions and characterizations, a complaint must plead "enough facts to state a claim to relief that is plausible on its face" and which "raise[s] a right to relief above the speculative level."  *Twombly*, 550 U.S. at 547, 555.  Such a showing "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555.  Moreover, to the extent that the Complaint asserts purportedly deceptive conduct by the Officer Defendants amounting to fraud without characterizing the allegations as such, the Committee is required to "state with particularity the circumstances constituting the fraud."  Fed. R. Civ. P. 9(b).  Put simply, "[i]n cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."  *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006).

### A.  The Committee Lacks Standing to Assert Any Claims Against Ms. Verdigets.

In the Complaint, the Committee alleges breach of fiduciary duty claims stemming from the closure of the Bank, FNBC's primary asset.  Specifically, the Committee claims that the Officer Defendants harmed FNBC by "needlessly depleting its funds on the Bank," so that "[w]hen the Bank was placed into receivership, FNBC, having exhausted its funds and access to capital, soon became insolvent."  (R.Doc. 1 ¶ 320.)  The Committee asserts that it has "standing to bring the claims asserted . . . on behalf of FNBC's bankruptcy estate."  (R.Doc. 1 ¶ 1.)  It does not.  The Committee lacks standing to bring these claims as a matter of law because all rights of the Bank and its shareholder, FNBC, with respect to the Bank and its assets are vested in the FDIC under FIRREA.

i. **Under FIRREA, the FDIC Succeeds to All Rights of the Bank Shareholders upon the Closure of the Bank, Including All Direct and Derivative Claims.**

When a federally insured bank is closed, the FDIC is appointed as the receiver and succeeds to all rights of the bank ***and its shareholders***, as a matter of law.  These rights include any claims that a shareholder may have, whether those claims are characterized as direct or derivative.  FIRREA mandates that both bank and bank shareholder claims belong to the FDIC alone.[11]  Specifically, the FDIC, "as conservator or receiver," succeeds to:

> (i) ***all rights, titles, powers, and privileges*** of the insured depository institution and ***of any stockholder***, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution.

12 U.S.C. § 1821(d)(2)(A)(i) (emphasis added).  Numerous courts have recognized that the FDIC succeeds to shareholder claims when a banking institution is closed.  *Pareto v. FDIC*, 139 F.3d 696, 700 (9th Cir. 1998) ("all rights and powers of a stockholder of the bank to bring a[n] . . . action [are vested] in the FDIC"); *FDIC v. Am. Cas. Co.*, 998 F.2d 404, 409 (7th Cir. 1993) (same); *Bauer v. Sweeny*, 964 F.2d 305, 307-08 (4th Cir. 1992) (same).  The Committee, having stepped into the shoes of FNBC, has standing no greater than FNBC.  (*See supra*, fn. 3.)  Because FNBC lacks standing to assert shareholder claims under FIRREA, so does the Committee.

Accordingly, several of the Courts of Appeals, based on FIRREA's transfer of claims to the FDIC, have dismissed claims brought by trustees and others, standing in the shoes of a closed bank's holding company, against the holding company's former directors and officers.  In each of these cases, the courts held that FIRREA mandated that the FDIC alone had the right to assert such claims.  *See, e.g.*, *Zucker v. Rodriguez*, 919 F.3d 649, 657 (1st Cir. 2019) ("[B]ecause the . . .

---

[11] FIRREA was passed in response to the Savings and Loan Crisis of the 1980s and sought to recover the costs associated with that crisis by, *inter alia*, "strengthen[ing] the enforcement powers of Federal regulators" such as the FDIC.  Pub. L. No. 101-73, 103 Stat. 187 (1989).

claims assert rights of a stockholder of the Bank with respect to the Bank and the assets of the Bank, the FDIC as receiver succeeded to those claims by operation of law") (internal quotations omitted); *Barnes v. Harris*, 783 F.3d 1185, 1192 (10th Cir. 2015) ("When the FDIC became the Bank's receiver, FIRREA gave the FDIC all rights that FNBC, a stockholder of the Bank, possessed with respect to the Bank and its assets."); *In re Beach First Nat'l Bancshares*, 702 F.3d 772, 777 (4th Cir. 2012) (same); *Lubin v. Skow*, 382 F. App'x. 866, 870 (11th Cir. 2010) (same).[12]

The First Circuit's 2019 decision in *Zucker v. Rodriguez* provides a detailed analysis of the statutory language and is the definitive decision warranting dismissal here.  In *Zucker*, the plan administrator for the bankruptcy estate of a bank holding company sued certain of the bank holding company's former directors and officers, alleging that their negligence and breach of fiduciary duties owed to the holding company caused the bank's closure and resulting loss of the holding company's investment in the bank.  919 F.3d 649, 650-51.  The officer and director defendants moved to dismiss under FIRREA and, as in this case, the FDIC moved to intervene to assert sole and exclusive rights to the claims.  *Id*. at 651.  The district court granted the motions, and the First Circuit affirmed the dismissal of the complaint, holding that "based on . . . the text of § 1821(d)(2)(A) . . . the Administrator's claims belong to the FDIC and were thus properly dismissed."  *Id*. at 654.  The *Zucker* court underscored that its holding applied where, as here, "[t]he claims are brought by a former bank holding company to recover its interest in a wholly owned subsidiary bank . . . [a]nd the holding company seeks to recover assets, like insurance . . . related to the [b]ank's failure."  *Id*. at 656.

---

[12] The Fifth Circuit has not yet addressed this issue.

The present case is indistinguishable from *Zucker*. FNBC is the Bank's sole shareholder, and FNBC's right to bring legal claims relating to the closed Bank and its assets is thus a "right of a stockholder of the Bank." *Zucker,* 919 F.3d at 656 (citing 12 U.S.C. § 1821(d)(2)(A)(i)). As in *Zucker*, the Committee's claims here against the Officer Defendants ultimately seek recovery for the "diminution in value of [FNBC's] interest in its primary subsidiary and most valuable asset – the Bank." (R.Doc. 1 at ¶ 318.) The Committee asserts that FNBC's damages stem from its ill-advised capital infusions to the Bank, its improvident incurrence of additional debt to prop up the Bank, and the Officer Defendants' alleged failure to insulate it from the Bank's purportedly unsafe and unsound practices. (*See* R.Doc. 1 ¶¶ 12, 320, 327, 332.) But no matter how characterized, these "damages" boil down to "the Holding Company's interest in the Bank" being "render[ed] valueless . . . precipitating the Holding Company's bankruptcy." (R.Doc. 1 ¶ 12.) As the Committee concedes, the Bank was FNBC's primary asset, and FNBC contributed "all or a substantial portion of" its capital "to the Bank to support the Bank's lending and investment activities." (R.Doc. 1 ¶¶ 2, 8.) To demonstrate damages, the Committee would thus have to plead that but-for the alleged malfeasance, "the assets of the Bank would have been much greater, and that increase in Bank assets would have inured to the benefit of [FNBC] as the Bank's parent stockholder." *Zucker*, 919 F.3d at 656. Moreover, the Committee's claims represent the assertion of a right of the stockholder, FNBC, "with respect to . . . the assets of the institution in receivership." 12 U.S.C. § 1821(d)(2)(A)(i). "That the claims depend on the [FNBC's] proving that malfeasance by [the Officer Defendants] depressed the Bank's assets means that the claims relate to or concern the assets of the Bank." *Zucker*, 919 F.3d at 656. As in *Zucker,* the FDIC succeeds to *all* such claims here, regardless of whether they are asserted *directly* on behalf of

FNBC as the Bank's stockholder or ***derivatively*** on behalf of the Bank. On these grounds alone, this Court should dismiss the Complaint.

The First Circuit noted in *Zucker* that earlier decisions from other circuits, in applying section 1821(d)(2)(A), had engaged in an analysis of whether the asserted claims were derivative or direct claims of the holding company as a shareholder. *Id*. at 657-58. In two of these cases, the courts did not determine if FIRREA transferred only derivative (as opposed to direct) claims to the FDIC, but correctly concluded that if the claims at issue were derivative in nature, they necessarily were claims of the closed bank that belonged to the FDIC. *Barnes v. Harris,* 783 F. 3d at 1193 ("If the Holding Company's claims are based on harm derivative of injuries to the Bank, then they qualify as claims of a shareholder 'with respect to the [bank] and the assets of the [bank]'"); *In re Beach First Nat'l Bancshares*, 702 F. 3d at 777-78 (bankruptcy trustee of holding company conceded that derivative claims were transferred to FDIC, with court concluding that all claims relating to the failed bank were derivative).[13] Only one appellate decision actually concluded that FIRREA transfers only derivative claims to the FDIC, but in that case none of the parties appear to have argued otherwise. *See Levin v. Miller*, 763 F.3d 667, 669 (7th Cir. 2014).[14] In any event, this distinction between direct and derivative claims has now been firmly rejected by the First Circuit based on the plain language of section 1821(d)(2)(A). *Zucker*, 919 F.3d at 656. Even beyond the plain language of the statute, the *Zucker* court found no evidence that Congress

---

[13] The Fourth Circuit allowed one claim brought by the trustee to proceed because it concerned the holding company's separate investment in a property-owning LLC. 702 F. 3d at 780.

[14] In *Levin*, Judge Hamilton, in a concurrence, questioned the validity of this direct-derivative distinction, stating that it was "not obvious . . . that the language [of 12 U.S.C. § 1821(d)(2)(A)] must be interpreted so narrowly." 763 F.3d at 673 (Hamilton, J., concurring). Judge Hamilton explained that the "statutory language is not precise and could be interpreted, for sound policy reasons, more broadly to include a stockholder's *direct* claims." *Id*. (emphasis in original). *Zucker* expressly adopted this reasoning, concluding that the FDIC succeeds to **all** claims, regardless of any direct-derivative distinction. 919 F.3d at 657-58.

intended to place such a limitation on the FDIC's power. *Id.* at 657. Accordingly, the Committee lacks standing as a matter of law to bring the claims alleged in its Complaint, whether characterized as direct or derivative claims. *Id.* at 658.

> ii. **Even if the Court Declines to Follow *Zucker* and the Plain Meaning of Section 1821(d)(2)(A), the Alleged Harm to FNBC is Dependent on and Inseparable from Harm to the Bank and Therefore the Claims Alleged are Derivative.**

Even under the direct versus derivative analysis from the pre-*Zucker* line of cases, the Committee would still lack standing because the claims it asserts in the Complaint are not direct claims under Louisiana law; they are derivative claims, meaning that section 1821(d)(2)(A) divests the Committee of standing.[15] Because the Committee has not alleged a distinct injury to FNBC beyond the loss of value of its investment in the Bank, it fails to state a direct claim under Louisiana law. Louisiana courts have followed the American Law Institute's test for distinguishing direct from derivative claims:

> If a shareholder can recover in a suit only by showing that the corporation was injured, then the suit is considered derivative in nature, even if the corporate injury does cause indirect harm to the shareholder, while if a recovery can be granted to the shareholder without proof of a corporate loss, then the suit is considered to be direct.

*Session Fixture Co. v. Pride Mktg. & Procurement*, Civ. A. No. 16-9373, 2016 U.S. Dist. LEXIS 171807, at *6-7 (E.D. La. Dec. 13, 2016) (citing 8 La. Civ. L. Treatise, Business Organizations § 34.03 (2d ed. 2016)). Suits to recover for "damage or loss to corporation-owned property or interests or to recover for losses caused to the corporation as a result of the self-dealing or negligence of a corporate officer or director" are considered to be derivative. *Id.* at *9 (emphasis in the original). A showing of injury that is unique to the shareholder is therefore required to assert

---

[15] Whether a claim is direct or derivative is determined by state law. *Atkins v. Hibernia Corp.,* 182 F.3d 320, 323 (5th Cir. 1999).

a direct claim. *Sierra v. Halliburton Energy Servs*., Case No. 6:17-CV-01002, 2018 U.S. Dist. LEXIS 145921, at *7 (W.D. La. Aug. 27, 2018).

Upon objective examination, the Committee's claims arise from alleged injury to the Bank as a result of its closure, which had a secondary effect upon FNBC.[16]  Put simply, the only "harm" to FNBC was the diminution of its investment or stock due to the closing of the Bank, its primary asset.  (R.Doc. 1 ¶¶ 2, 235.)  This allegation does not state a direct shareholder claim under Louisiana law,[17] and courts have deemed such claims derivative in similar contexts.  *See, e.g., Barnes*, 783 F.3d at 1188 ("Because almost all of the plaintiffs' claims assert injury to the Holding Company that is derivative of harm to the Bank, those claims belong to the FDIC"); *In re Beach First Nat'l Bancshares*, 702 F.3d at 777-79 (holding that where plaintiffs fail to plead injury "that occurred at the [Holding Company] (parent) level that did not simultaneously and primarily occur at the Bank (subsidiary) level, the claims are derivative and belong solely to the FDIC").

Here, the Committee alleges deficiencies in internal controls, risk assessment and management, and financial reporting that led to the collapse of the Bank.  But the entity that suffered the proximate harm in this instance was the ***Bank***, which was ultimately closed by the OFI.  (R.Doc. 1 ¶ 37.)  The Bank's closure had the secondary effect of "rendering valueless the

---

[16] The Committee purports to assert "direct" claims against Ms. Verdigets, but that characterization is not grounded in substance and is masked with attempts at artful pleading that ignore reality.  *Barsky v. Andersen*, Civ. A. No. H-02-1922, 2005 U.S. Dist. LEXIS 32352, at *11 (S.D. Tex. Aug. 15, 2005) ("In determining whether a plaintiff pleads derivative claims, courts look at the substance rather than the plaintiff's characterization of his claims"); *see also In re SkyPort Glob. Commc'ns*., Inc., Case No. 08-36737, Adv. No. 10-3150, 2011 Bankr. LEXIS 123, at *83 (Bankr. S.D. Tex. Jan. 13, 2011) ("Fifth Circuit precedent also dictates that this Court look at the substance . . . and the nature of the wrongs alleged therein, rather than the Plaintiffs' characterization.").

[17] *Crocker v. FDIC*, 826 F.2d 347, 352 (5th Cir. 1987) (holding that "because the only injury [the plaintiffs] have effectively alleged is a decline in the value of the Bank stock, they have failed to state a direct, personal injury distinct from that suffered by the corporation that would permit them to maintain an individual cause of action"); *Whalen v. Carter*, 954 F.2d 1087, 1092 (5th Cir. 1992) (same); *Ingersoll v. W. Delta Oil Co*., Civ. A. No. 01-1406 C/W 02-614, 2002 U.S. Dist. LEXIS 17249, at *3 (E.D. La. Sept. 12, 2002) (same).

Holding Company's interest in the Bank" and "precipitating [its] bankruptcy." (R.Doc. 1 ¶¶ 12, 235.)[18]  The Committee essentially concedes derivative harm by linking FNBC's damages to (1) the "infusion of  . . . funds into *the Bank* at times *the Bank* was poorly controlled and faced exceptional risk," (2) the alleged acquiescence in "practices of *the Bank*, which caused *the Bank* to be closed[,] . . . rendering valueless the Holding Company's interest in *the Bank*," and (3) the purported failure to exercise authority "as the controlling shareholder of *the Bank*, to correct *the Bank's* unsafe and unsound practices."  (R.Doc. 1 ¶ 12) (emphasis added).  Regardless of how cleverly the Committee pleads its claims, this Court should see the Complaint for what it is—a set of repackaged claims "seek[ing] redress for injuries that first befell the Bank, and reached the Holding Company only derivatively as a result of its ownership interest in the Bank." *See Barnes*, 783 F.3d at 1194.

The Committee's claims plainly articulate that the alleged harm to FNBC flowed from activity at the Bank level, which allegedly resulted in the ultimate demise of the Bank.  For instance, Count I asserts breach of fiduciary duties by the Officer Defendants for failure to implement and maintain effective risk management procedures and internal controls.  (*See* R.Doc. 1 ¶¶ 316-321.)  But in describing the duties owed by each Officer Defendant, the Committee admits that they were the same for both entities.  The Committee contends that the Officer Defendants were duty-bound to: "enable the Holding Company *and its subsidiaries* properly to account for and accurately to report on the financial results"; "enable the Holding Company *and the Bank* to assess and manage risks. . ."; and "ensure that the Holding Company *and its subsidiaries* timely comply with regulations."  (R.Doc. 1 ¶ 318.)  The only alleged "harm" to the Holding Company

---

[18] Notably, the Complaint lacks any allegation that FNBC had any business of its own aside from the ownership of its subsidiary.  *See Barnes*, 783 F.3d at 1194 (finding that a holding company's lack of interest in non-bank assets supported conclusion that its claims were derivative in nature).

stemming from the purported breaches was contribution of the Holding Company's assets to fund the Bank's operations and investments.  (R.Doc. 1 ¶ 320.)  This is a classic derivative diminution of stock claim.  Absent the Bank closure, these capital contributions would have been par for the course and would not have resulted in any injury.  *Barnes,* 783 F.3d at 1194.

In Count II, the Committee alleges that FNBC was injured when its Board "authorized the improvident incurrence of $60 million in new debt" in 2015 to provide additional funds to invest in the Bank.  (R.Doc. 1 ¶ 327.)  But debt is not an intrinsic harm, and courts have deemed similar claims derivative in nature, not direct shareholder claims.  *Barnes*, 783 F.3d at 1194; *Lubin*, 382 F. App'x at 872.  For example, in *Lubin*, plaintiffs alleged that a bank holding company suffered unique harm because its officers took on $34 million in debt to finance the bank's operations.  382 F. App'x at 872.  The Eleventh Circuit held that the claim was derivative because it was ultimately "[t]he Bank's insolvency, which precluded the Holding Company from repaying the $34 million" that "forced the Holding Company into bankruptcy."  *Id*.  Because "repayment of this debt depended upon the success of the Bank" the holding company's harm was derivative of the harm to the bank.  *Id*.  The same logic applies here.

Finally, in Count III, the Committee asserts claims for breach of fiduciary duty and corporate waste, arguing that the Officer Defendants (1) withheld and concealed material information from the FNBC Board that induced it to make capital contributions over several years (R.Doc. 1 at ¶ 332), and (2) caused the FNBC Board to pay them "lucrative, unearned compensation packages" (R.Doc. 1 at ¶¶ 332, 334).  Allegations about the capital contributions to the Bank fail to state a direct claim for the reasons stated above.  Moreover, Louisiana law is clear that the latter claims about executive compensation are also derivative.  *Languirand v. Lopez*, 18-CA-245 (La. App. 5 Cir. 12/12/18); 261 So. 3d 1054, 1060 ("[A]ctions that have been classified

by Louisiana courts as derivative include . . . excessive payment of salaries and bonuses"). Accordingly, each of the claimed "injuries" to FNBC are collateral to those of the Bank.  The Committee, standing in the shoes of FNBC as the sole shareholder of the Bank, therefore has not, and cannot, articulate a direct claim.[19]  So even under the pre-*Zucker* line of cases, the Committee lacks standing.

### B. The Complaint Warrants Dismissal Because It Fails To Plead Facts That State A Plausible Claim Against Ms. Verdigets.

This Court should also dismiss the Complaint for the independent reason that the factual allegations against Ms. Verdigets fail to satisfy the Fed. R. Civ. P. 12(b)(6) pleading standards. Ignoring the Committee's legal conclusions and characterizations, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.  The Complaint fails in this regard.

Under Louisiana law, an officer of a bank or bank holding company may be held liable ***only*** for gross negligence, not simple negligence.  Gross negligence is defined as a "reckless disregard of, or a carelessness amounting to indifference to the best interests of the corporation or the shareholders thereof" involving "a substantial deviation below the standard of care expected to be maintained by a reasonably careful person under like circumstances" or intentional tortious conduct or breaches of the duty of loyalty.  *See* LA. REV. STAT. ANN. §§ 6:2(9), 6:291(b) (Supp.

---

[19]  In addition, portions of the claims are time-barred.  Specifically, the allegations related to (a) the capital contributions by FNBC to its sole subsidiary, the Bank, from 2011-2014; (b) the approval of the issuance of the $60 million in subordinated debentures in February 2015; and (c) the approval of officer compensations packages from 2012 to 2015 are beyond the four-year peremption period applicable to claims in actions against officers of bank holding companies.  *See* LA. REV. STAT. ANN. § 6:293(b) (Supp. 2015).

2015).  The Complaint is devoid of any factual allegations satisfying this high standard against Ms. Verdigets that are plausible on their face or which raise a right to relief above the speculative level.  The Committee makes conclusory allegations but fails to support these with specific facts. For instance, the Complaint asserts that the purported fiduciary breaches "rose above even gross negligence and constituted breaches of the duty of loyalty, acts or omissions not in good faith, acts involving intentional misconduct, acts involving a knowing violation of law, and/or transactions from which that derived improper personal benefits."  (R.Doc. 1 ¶ 11.)   But merely stating that legal conclusion has no talismanic effect to make it so.  *Twombly*, 550 U.S. at 555.

The Complaint is notably silent with regard to any supporting facts showing gross negligence, bad faith, intentional misconduct, a knowing violation of law, or receipt of improper personal benefits by Ms. Verdigets.  The Committee asserts that the magnitude of the 2016 restatement of financial results evidences the Officer Defendants' "knowing participation" in the misconduct.  (R.Doc. 1 ¶ 291.)  But "the magnitude of [an] error does not show that the existence of the error was clear when it was made."  *Plaisance v. Schiller*, Civ. A. No. H-17-3741, 2019 U.S. Dist. LEXIS 42073, at *53 (S.D. Tex. Mar. 14, 2019).   Moreover, "the mere publication of inaccurate accounting figures, or a failure to follow [Generally Accepted Accounting Principles ("GAAP")], without more" does not establish an intent to deceive or knowledge of wrongdoing. *See Ind. Elec. Workers' Pension Trust Fund Ibew v. Shaw Grp., Inc.*, 537 F.3d 527, 534 (5th Cir. 2008); *see also Owens v. Jastrow*, 789 F.3d 529, 543 (5th Cir. 2015) (to establish scienter "[p]laintiffs must also plead facts leading to a strong inference that each defendant knew the numbers violated GAAP or was severely reckless in disregarding the concerns" about GAAP compliance).

While the Committee alleges violations of law and the receipt of improper personal benefits by Defendants St. Angelo, Ryan, and Burnell, it does not—because it cannot—make similar claims about Ms. Verdigets.  (R.Doc. 1 ¶¶ 292-306.)   The Committee cannot maintain a breach of fiduciary duty claim against Ms. Verdigets by painting her with the same brush as the other Officer Defendants, who are purportedly under criminal investigations or related proceedings, where no similar allegations have been levied against her.  Because the Committee fails to set forth specific factual allegations about Ms. Verdigets' conduct that deviate so far from the standard of care as to constitute gross negligence, it fails to state a breach of fiduciary duty claims against her.

Indeed, the Complaint is devoid of ***any specific factual*** allegations against Ms. Verdigets individually, beyond that she signed and certified various FNBC public filings under the Sarbanes-Oxley Act of 2002 ("SOX") in her role as CFO.[20]   But the fact that she signed these SOX certifications—absent specific factual allegations that she either knew or was severely reckless in not knowing that they were misstated at the time she signed them—does not support a breach of fiduciary duty claim.  *See Shaw*, 537 F.3d at 545; *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 187 (5th Cir. 2019).  The Fifth Circuit has made clear that signing SOX certifications alone is not indicative of a party's intent or knowledge of wrongdoing.  *See, e.g., Shaw*, 537 F.3d at 545. If it were, culpability of SOX signatories would be "established in every case where there was an accounting error or auditing mistake made by a publicly traded company."  *Id.* (internal citations omitted).  SOX certifications are only probative of knowledge or wrongdoing if the signatory was "severely reckless in certifying the accuracy of the financial statements," which requires plaintiff

---

[20] *See* R.Doc. 1 ¶¶ 106, 108, 110, 113, 115, 117, 120, 122, 127.  Under SOX, senior executives of public companies are required to certify the accuracy of quarterly and annual financial reports.  *See* 15 U.S.C. § 7241(a).  The officers likewise must certify that they have "evaluated the effectiveness of the issuer's internal controls" within the previous ninety days.  15 U.S.C. § 7241(a)(4)(C), (D).

to plead "facts establishing that the officer who signed the certification had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other red flags, that the financial statements contained material misstatements or omissions." *Id.* (internal quotations omitted).  No such facts have been alleged in the present case.

Complicated and subjective accounting decisions, even when erroneous in hindsight, are hardly the stuff of gross negligence.  FNBC, whose estate is now represented by the Committee, conceded as much when it argued in its joint memorandum with Ms. Verdigets in support of their motion to dismiss the securities litigation that these contested accounting judgments "involve[d] not only complex analyses . . . but also matters of opinion, requiring considerable subjective judgment."[21]  In light of FNBC's own prior argument, it is disingenuous for the Committee to now take the position that these accounting decisions were so obviously flawed that Ms. Verdigets was reckless in not knowing that the filings were misstated as a result.

The Complaint is rife with conclusory group pleadings of misconduct and innuendo of alleged fraud, without any ***factual allegations*** specific to Ms. Verdigets upon which these assertions are based.[22]  For instance, the Committee alleges that the Officer Defendants presented "incomplete and inaccurate information . . . to the Holding Company's Board . . . in conspiracy with, and aided and abetted by, St. Angelo" which "prevented the Board from accurately assessing

---

[21] *See* R.Doc. 78-2 at p. 20, *Kinzer*, No. 2:16-cv-04243-KDE-JVM (E.D. La. Feb. 15, 2017).

[22] *See, e.g.,* R.Doc. 1 ¶¶ 4, 73, 95, 288 ("the Officer Defendants ***deceived***..."; "the Officer Defendants . . . ***misrepresented*** . . . and, by omission, ***deceived***"; "the Officer Defendants failed to provide . . . truthful, accurate, and complete information"; "the Officer Defendants caused incomplete, inaccurate, and materially false information to be conveyed") (emphasis added).  Moreover, to the extent that the thrust of the claims against Ms. Verdigets and the other Officer Defendants are really about purported fraud, the heightened pleading standards of Fed. R. Civ. P. 9(b) are applicable.  Fed. R. Civ. P. 9(b); *see also United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 872 (5th Cir. 2008).  Because the Complaint fails to meet the even the lower pleading standard for the reasons explained herein, the Committee accordingly fails to meet the heightened pleading standard of Fed. R. Civ. P. 9(b) applicable to claims sounding in fraud.

the risks posed to the Holding Company." (R.Doc. 1 ¶ 10.) Even ignoring the fact that members of the Bank's Board of Directors (including Defendant Ashton J. Ryan) constituted a majority of the FNBC Board—and therefore it is illogical to hold them responsible for ***misleading themselves*** about the Bank's finances and practices—the Committee fails to allege ***what*** the purportedly incomplete and inaccurate information was and ***why*** it misled the FNBC Board about risks it faced.[23] This assertion and the other similar vague allegations against Ms. Verdigets in the Complaint are unsupported conclusions that fail to satisfy the *Twombly* and *Iqbal* pleading standards. The Court should dismiss the Complaint for this reason, too.

## IV.   CONCLUSION

Whether direct or derivative, the Committee lacks standing under FIRREA to pursue its claims against Ms. Verdigets. And even if this Court adopted the pre-*Zucker* line of authority, the Committee's claims are derivative. Finally, the Committee's attempt to maintain claims against Ms. Verdigets by repeating conclusory allegations of wrongdoing and conduct ***by other individuals*** is insufficient to maintain an action against Ms. Verdigets. For the foregoing reasons, each Count of the Complaint as to Ms. Verdigets should be dismissed with prejudice.

---

[23] Because the Bank's Board of Directors and the FNBC Board were nearly identical, it strains credulity to assume there was any knowledge on behalf of the Bank's Board of Directors not also known by the FNBC Board.

Respectfully submitted,

**STEEG LAW FIRM, L.L.C.**


_____/s/ Charles L. Stern, Jr._____
CHARLES L. STERN, JR. (12451)
201 St. Charles Avenue, Suite 3201
New Orleans, LA 70170
Telephone: (504) 582-1199
Facsimile: (504)-582-1240
E-mail: cstern@steeglaw.com


Mary C. Gill (*pro hac vice*)
mary.gill@alston.com
Elizabeth Gingold Clark (*pro hac vice*)
elizabeth.clark@alston.com
Courtney E. Quirós (*pro hac vice*)
courtney.quiros@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Suite 4900
Atlanta, Georgia 30309-3424
Phone: (404) 881-7000
Facsimile: (404) 881-7777

**ATTORNEYS FOR DEFENDANT MARY BETH
VERDIGETS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served upon all parties requesting

notice via the Court's CM/ECF notification system this 12th day of August, 2019.


/s/ Charles L. Stern, Jr._____