UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FIRST NBC BANK HOLDING COMPANY** | **CIVIL ACTION NO. 19-10341 C/W NO. 20-3189** |
| **VERSUS** | **APPLIES TO: 20-3189** |
| **ASHTON J. RYAN, JR., ET AL** | **SECTION: "S" (3)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion to Withdraw Reference** filed by the Federal Deposit Insurance Corporation as Receiver for First NBC Bank Holding Company (Rec. Doc. 1) is **GRANTED**, and the reference to the bankruptcy court of the Motion for Entry of Order Pursuant to Bankruptcy Rule 9019(a) Approving Settlement Agreement is hereby withdrawn;

**IT IS FURTHER ORDERED** that this matter is hereby **CONSOLIDATED** with <u>Official Committee of Unsecured Creditors of First NBC Bank Holding Company v. Ashton J. Ryan, Jr., et al.</u>, Civil Action No. 19-10341;

**IT IS FURTHER ORDERED** that the **Motion to Stay** filed by Federal Deposit Insurance Corporation as Receiver for First NBC Bank Holding Company (Rec. Doc. 1) is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion to Intervene and Stay** filed by the United States (Rec. Doc. 4) is **DENIED as moot**.

## BACKGROUND

Following the failure of First NBC Bank ("the Bank"), on April 28, 2017, the Louisiana Department of Financial Institutions closed the Bank and appointed the Federal Deposit Insurance Company("FDIC-R") as receiver for the Bank. Before the Bank's failure, plaintiff, First NBC

1

Bank Holding Company ("FNBC") was the Bank's only stockholder. Shortly after the failure, FNBC filed for chapter 11 bankruptcy protection. That matter is pending as Case No. 17-11213 in the Bankruptcy Court for the Eastern District of Louisiana ("bankruptcy case").

Subsequently, the bankruptcy court authorized an official Unsecured Creditors Committee ("UCC") to pursue claims of FNBC and its bankruptcy estate against, among others, "current and former officers and directors [of FNBC]" and "Ernst & Young, and any other current or former auditor or accountant of FNBC." Three days later, the UCC filed <u>Official Committee of Unsecured Creditors of First NBC Bank Holding Company v. Ashton J. Ryan, Jr., et al.</u>, Civil Action No. 19-10341 (E.D. La.) ("<u>UCC v. Ryan</u>"). In that case, which is pending before the undersigned, the UCC alleges breach of fiduciary duty, accounting malpractice, and other claims against certain former officers and auditors of FNBC and the Bank. Among the officer defendants is Mary Beth Verdigets. Verdigets is insured under an Officers' and Directors' liability policy ("O&D policy") that provides coverage to numerous defendants. Verdigets has reached a settlement agreement with the UCC for its claims against her, to be funded by the O&D policy.

Concomitantly, the United States initiated a criminal investigation into the failure of the Bank. To date, ten individuals have been charged with offenses including bank fraud, conspiracy to commit bank fraud, and making false entries in bank records. Six defendants[1] have pleaded guilty to conspiring to commit bank fraud. The remaining four defendants, Ashton J. Ryan, Jr., William J. Burnell, Robert B. Calloway, and Frank J. Adolph, were indicted in a 46-count indictment by a federal grand jury in the Eastern District of Louisiana on July 10, 2020.

---

[1] The individuals are Jeffrey Dunlap, Gregory St. Angelo, Kenneth Charity, Arvind Vira, Gary Gibbs, and Warren Treme.

Defendants St. Angelo, Burnell, and Ryan moved to stay UCC v. Ryan due to the ongoing criminal proceedings against them. The Government also moved to intervene in UCC v. Ryan and stay the case, to prevent discovery or other activity in the civil case from compromising its investigation. After weighing the factors applicable to determining the appropriateness of a stay, a stay was entered.[2]

Subsequently, the FDIC-R intervened seeking a partial lifting of the stay to determine the ownership of the claims in this matter. It is FDIC-R's contention that it, rather than the UCC, owns the claims against the Officer and Director defendants. While aware of the advantages of resolving the threshold issue of the ownership of the claims, the court nevertheless declined to lift the stay, finding that the considerations that informed the initial decision that a stay was necessary to preserve the integrity of the Government's criminal investigation were still applicable.[3]

Pursuant to Bankruptcy Rule 9019(a), the UCC moved for entry of an order approving a $1.75 million settlement with Verdigets in the bankruptcy case. FDIC-R contends that approving the settlement would be unjust, because the claim against Verdigets belongs to FDIC-R, not the UCC. FDIC-R further argues that the settlement would be paid out of a limited policy, depleting the funds available to FDIC-R and other insureds under the policy, and the money would be difficult to recover if it is subsequently found that FDIC-R owns the claims. Thus, FDIC argues that this court must determine this claims ownership issue before any claims can be settled.

In the motion now before the court, FDIC-R moves to withdraw the reference to the bankruptcy court of Verdigets' Motion for Entry of Order Pursuant to Bankruptcy Rule 9019(a)

---

[2] UCC v. Ryan, Civil Action No. 19-10341, Rec. Doc. 90.
[3] Id., Rec. Doc. 102.

Approving Settlement Agreement ("Settlement Approval Motion"), and to stay litigation of that motion pending resolution of the parallel criminal proceedings.

The UCC has filed an objection, arguing that both the motion to withdraw the reference and the Settlement Approval Motion should be referred to the bankruptcy judge for a report and recommendation, and further argues that the only legal question involved is whether to approve the settlement under Bankruptcy Rule 9019(a). Verdigets has joined in the UCC's objection.

Following the filing of the Motion to Withdraw the Reference, the Government moved to intervene, and if the reference is withdrawn, to stay this matter pending resolution of the criminal matters related to this case. The FDIC-R has joined in the Government's motion. The UCC opposes the Government's motion.

## DISCUSSION

**I. Motion to Withdraw Reference**

  **A. Standard for Mandatory Withdrawal**

"The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Thus, mandatory withdrawal under § 157(d) has three elements "(1) the proceeding in the bankruptcy court involves a substantial and material question of both title 11 and non-Bankruptcy Code federal law, (2) the non-Bankruptcy Code federal law has more than a de minimis effect on interstate commerce, and (3) the motion for withdrawal was timely filed." Lifemark Hosps. of Louisiana, Inc. v. Liljeberg Enterprises, Inc., 161 B.R. 21, 24 (E.D. La. 1993). These standards are strictly construed, so as not to turn the statute into an "escape hatch through

which most bankruptcy matters [could] be removed to a district court." In re National Gypsum Co., 145 B.R. 539, 541 (N.D. Tex. 1992).

## B. Application to Facts of Case

### 1. Substantial and Material Question of Non-Bankruptcy Code Law

The first element required for mandatory withdrawal is that the proceeding sought to be withdrawn must involve a substantial and material question of both Title 11 and non-Bankruptcy Code federal law. "Substantial and material" means that the proceeding must involve "significant" interpretation of law, not just the routine application of well-settled law to clearly delineated facts. Lifemark, 161 B.R. at 24 (quotations omitted). In addition, withdrawal is not mandatory where the application of non-Bankruptcy Code law is merely speculative. Id.

The Title 11 question presented here is whether to approve a settlement agreement under Bankruptcy Rule 9019(a). There is also a substantial and material question of non-Bankruptcy Code law presented, specifically, the resolution of which entity owns the claims, a prerequisite to validly settling them. Resolution of this issue requires the interpretation of 12 U.S.C. § 1821(d)(2)(A)(i). Subsection (d) of that statute provides for the powers and duties of the FDIC as conservator or receiver of a depository institution. Id. (2)(A)(i) states that in that role, the FDIC "shall . . . succeed to-- (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; . . . ." Id. The FDIC-R argues that this the language transfers all rights to litigation claims to the FDIC.

The Fifth Circuit Court of Appeals has not directly addressed this question, and other appellate courts have interpreted the statute differently in different contexts.[4] Thus, the interpretation of § 1821(d)(2)(A)(i) required to determine the ownership of the claims involves more than the straightforward application of well-settled law. Therefore, a substantial and material question of non-bankruptcy code law is presented.

**2. Effect on Interstate Commerce**

The second element required for mandatory withdrawal of the reference is that the non-Bankruptcy Code law must bear more than a de minimis effect on interstate commerce. Case law discussing this requirement is limited. However, while not binding on this court, the court in In re Rimsat, Ltd., 196 B.R. 791, 797 (N.D. Ind. 1995), undertook a thorough analysis, examining congressional testimony and bankruptcy cases, and concluded that the effect on interstate commerce element requires that the non-bankruptcy law involved must govern the underlying rights and duties of the parties, and must have an immediate and direct impact on interstate commerce.

The statute at issue in this case, 12 U.S.C. § 1821(d)(2)(A)(i), governs the underlying rights and duties of the parties, and has an immediate and direct impact on interstate commerce. The FDIC-R is a federal agency enforcing and administering certain provisions of Title 12 pursuant to specific statutory authority. The FDIC-R contends that the relevant provision gives it ownership of all claims against the officers and directors. The statute thus governs the rights and duties of the parties in this case. In operating under the statute, the FDIC takes ownership of hundreds of

---

[4] See e.g. Zucker v. Rodriguez, 919 F.3d 649 (1st Cir. 2019); Barnes v. Harris, 783 F.3d 1185 (10th Cir. 2015); Levin v. Miller, 763 F.3d 667, 670 (7th Cir. 2014); and Vieira v. Anderson (In re Beach First Nat'l Bancshares, Inc.), 702 F.3d 772 (4th Cir. 2012).

millions of dollars in assets from banks across the United States. Not only does the subject of § 1821's regulation, banks, have a direct and immediate impact on interstate commerce, but the FDIC-R's exercise of its powers under § 1821 itself operates in multiple states at once. Thus, § 1821(d)(2)(A)(i) has more than a de minimis effect on interstate commerce.

### 3. Timeliness

While 28 U.S.C. § 157(d) does not include a specific time limit for the filing of a motion to withdraw reference, stating only that the motions must be "timely", the motions are considered timely if filed as soon as possible after the moving party has notice of the grounds for withdrawing the reference. 8A C.J.S. BANKRUPTCY § 381. In this case, the UCC filed the Settlement Approval Motion on November 17, 2020, and the motion to withdraw was filed three days later, on November 20, 2020. The motion is therefore timely.

Accordingly, because the legal question presented in the proceeding to be withdrawn involves a substantial and material question of non-bankruptcy law that has a more than de minimis effect on interstate commerce, and the motion to withdraw the reference was timely filed, the requirements for mandatory withdrawal pursuant to 28 U.S.C. § 157(d) are met, and the reference of the Settlement Approval Motion to the bankruptcy court is withdrawn.

Further, the motion to withdraw having been granted, the court consolidates this matter, Civil Action 20-3189, into the pending case in which the settlement approval is sought, Civil Action 19-10341.

## II.  FDIC-R's Motion to Stay Settlement Approval Motion

The FDIC-R also moves to stay the court's consideration of the Settlement Approval Motion to avoid conflicting with related pending criminal proceedings. The Settlement Approval Motion is being consolidated into <u>UCC v. Ryan</u>, Civil Action No. 19-10341, which is pending in

this court. The court has twice considered the appropriateness of a stay in that case, and found it to be appropriate. In its most recent consideration of the stay, the court denied the FDIC-R's motion for a partial lifting of the stay to allow the ownership of claims issue to go forward, and found that a stay was warranted due to the potential conflict with ongoing criminal proceedings being pursued by the Government.[5] Resolution of the Settlement Approval Motion requires resolution of which entity owns the claims to be settled, and the court has previously found it was not appropriate to lift the stay to resolve that issue. That stay remains in place, and the rationale for granting that stay is still applicable. Declining to stay the Settlement Approval Motion, and allowing it to go forward, would circumvent the court's previous stay order. Accordingly, the FDIC-R's motion to stay the Settlement Approval Motion is granted.

### III. Government's Motion to Intervene and Stay

The United States has moved to intervene and to stay disposition of the Settlement Approval Motion, arguing that a stay is necessary to preserve the integrity of the ongoing criminal process related to its investigation. The Settlement Approval Motion is being consolidated into UCC v. Ryan, Civil Action No. 19-10341, in which the United States previously moved to intervene and which is currently stayed. The court is staying the Settlement Approval Motion on motion of the FDIC-R. Accordingly, the Government's Motion to Intervene and Stay is denied as moot. Accordingly,

---

[5] Civil Action 19-10341, Rec. Docs. 90 & 120. For the same reason, other sections of the court with cases stemming from the FNBC failure have also entered stays. See, e.g., Zurich Am. Ins. Co. v. St. Angelo, No. 20-01005 (Bank. E.D. La. Oct. 21, 2020); Fed. Deposit Ins. Corp. v. Ernst & Young LLP, No. 20-1259, 2020 WL 3960345 (E.D. La. July 13, 2020); Cont'l Cas. Co. v. St. Angelo, No. CV 19-13382, 2020 WL 425865 (E.D. La. Jan. 27, 2020); Academy Place v. Ryan, No. 18-10881, 2019 WL 3974793 (E.D. La. Aug. 22, 2019).

**IT IS HEREBY ORDERED** that the **Motion to Withdraw Reference** filed by the Federal Deposit Insurance Corporation as Receiver for First NBC Bank Holding Company (Rec. Doc. 1) is **GRANTED**, and the reference of the Motion for Entry of Order Pursuant to Bankruptcy Rule 9019(a) Approving Settlement Agreement is hereby withdrawn;

**IT IS FURTHER ORDERED** that this matter is hereby **CONSOLIDATED** with <u>Official Committee of Unsecured Creditors of First NBC Bank Holding Company v. Ashton J. Ryan, Jr., et al.</u>, Civil Action No. 19-10341. All future pleadings must be captioned as styled above;

**IT IS FURTHER ORDERED** that the **Motion to Stay** filed by Federal Deposit Insurance Corporation as Receiver for First NBC Bank Holding Company (Rec. Doc. 1) is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion to Intervene and Stay** filed by the United States (Rec. Doc. 4) is **DENIED as moot**.

New Orleans, Louisiana, this  25th  day of March, 2021.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**