UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FIRST NBC BANK HOLDING COMPANY,<br><br>        Plaintiff,<br><br>        v.<br><br>ASHTON J. RYAN, JR. ET AL.,<br><br>        Defendants. | Civil Action No. 2:19-cv-10341<br><br>Section "S" (3)<br><br>Judge Mary Ann Vial Lemmon<br><br>Magistrate Judge Michael North |

**MEMORANDUM IN SUPPORT OF EY DEFENDANTS' MOTION
TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE,
<u>TO DISMISS THE COMPLAINT</u>**

    Defendant Ernst & Young LLP ("EY"), on its own behalf and with respect to the Auditor Does 1-20[1] (collectively the "EY Defendants" or, as referred to in the Complaint, the "Auditor Defendants"), submits this memorandum in support of the EY Defendants' motion to compel arbitration of this dispute in this District. In the alternative, and only if the Court were to rule that arbitration is not mandated, the Complaint should be dismissed with prejudice as to the EY Defendants pursuant to Rule 12(b)(6).

### INTRODUCTION

    Plaintiff's claims against the EY Defendants must be arbitrated. First NBC Bank Holding Company ("FNBC" or "Holding Company") expressly agreed to arbitrate any claims relating to the services that EY performed as FNBC's independent auditor. Plaintiff, now the Litigation and

---

[1] These remaining individual "Doe" auditors are not named, nor have they been served. The Complaint additionally named Mark Bell, another individual auditor, as a defendant. However, Plaintiff voluntarily dismissed Mr. Bell from the lawsuit on June 28, 2023. *See* ECF No. 134.

1

Distribution Trustee, pursues its claims in the shoes of FNBC. Plaintiff has assumed FNBC's obligations under those agreements and even asserts claims based on those very same agreements. In fact, Plaintiff *already initiated* a separate arbitration proceeding specifically invoking the arbitration provisions of those agreements and asserting claims that are identical to those raised in this litigation. Plaintiff can hardly oppose arbitration when Plaintiff has already demanded it. Indeed, it is difficult to understand how Plaintiff filed its Complaint in this Court against the EY Defendants in the face of the parties' explicit agreement to arbitrate. This Court should compel arbitration pursuant to the Federal Arbitration Act ("FAA") and stay the claims asserted here as to the EY Defendants. *See* 9 U.S.C. §§ 3–4.

In the alternative—and only in the event that arbitration is not mandated[2]—the Complaint must be dismissed as to the EY Defendants because Plaintiff's claims are barred under Louisiana law. In particular, the claims against the EY Defendants are time-barred for two independent reasons. First, the allegations of the Complaint establish that Plaintiff's claims are barred under Louisiana's three-year peremptive period and one-year "discovery" statute of limitations for claims against accountants because the claims expired even before FNBC declared bankruptcy. *See* La. R.S. § 9:5604A. Second, Plaintiff failed to seek review of its claims by a public accountant review panel (or obtain a waiver of that requirement) as mandated by Louisiana law before filing suit. *See id.* § 37:102A. The law is clear that it is too late to do so now. Accordingly, to the extent Plaintiff's claims are not referred to arbitration, they must be dismissed with prejudice.[3]

---

[2] To the extent the Court does not compel arbitration, the EY Defendants reserve the right to pursue their statutory right to an interlocutory appeal under the FAA, staying all other proceedings while the appeal is ongoing. *See* 9 U.S.C. § 16(a); *Coinbase, Inc. v. Bielski*, 2023 WL 4138983 (U.S. June 23, 2023).

[3] The EY Defendants note that there is currently a threshold dispute between the FDIC, as Receiver for First NBC Bank ("FDIC-R"), and Plaintiff relating to the ownership of Plaintiff's claims that could moot this motion. The FDIC-R asserts that it owns the claims brought here and that it would dismiss this action should it be determined that the FDIC-R owns the claims. *See* ECF Nos. 119, 131, 133; *see also* ECF No.

**BACKGROUND**

EY served as external auditor for FNBC, the holding company owner of First NBC Bank (the "Bank"). Compl. ¶ 15. As relevant here, EY audited FNBC's year-end financial statements for the periods ending December 31, 2011, 2012, 2013, 2014, and 2015, and issued audit reports on March 29, 2013; March 31, 2014; March 31, 2015; and August 25, 2016. *Id*. ¶ 242. EY also issued opinions relating to FNBC's internal controls over financial reporting as part of its year 2014 and 2015 audits. *Id*.[4]

**A.     The Parties' Agreements.**

In connection with the audits, FNBC and EY entered into written engagement agreements setting forth the scope of the services EY would perform. Compl. ¶¶ 16, 342. As Plaintiff states, "EY provided its audit services to FNBC pursuant to" these "contractual engagement letters." *Id*. ¶ 16. Each agreement expressly provided that "any dispute or claim arising out of or relating to the Audit Services, this Agreement, or any other services provided by or on behalf of EY or any of its . . . agents . . . shall be resolved by mediation or arbitration as set forth in the attachment to this Agreement . . . ." *See, e.g.*, Ex. A at ¶ 40 (2014 agreement). The "Audit Services" are described in paragraph 1 of each engagement letter and include all of the services alleged in the Complaint. The agreements require the parties to resolve all disputes relating to EY's audit services (or any other services) first through mediation and, if that is unsuccessful, through

---

128. As the EY Defendants have previously explained at greater length, *see* ECF No. 117, that question of claim ownership can and should be decided at the outset. The EY Defendants file this motion now, in light of the upcoming June 29 scheduling conference ordered by the Court, *see* ECF No. 123, out of an abundance of caution to ensure their rights to arbitration are fully preserved.

[4] For purposes of this motion to compel arbitration and to dismiss, the EY Defendants accept, as they must, the factual allegations contained in the Complaint as true. The EY Defendants do not admit the truth of those allegations for any other purpose.

arbitration, which "shall be governed by the Federal Arbitration Act." *Id*. at 15. The agreements provide that the "result of the arbitration shall be binding on the parties." *Id*. at 16.

**B.     FNBC Discloses Accounting Errors and the Need To Restate Its Financial Statements.**

Plaintiff asserts that FNBC's "false story" of its accounting "began to unravel early in 2016." Compl. ¶ 193. Among other things, on March 16, 2016, FNBC disclosed that the filing of its 2015 annual report on Form 10-K would be delayed, explaining that FNBC had "identified errors in its accounting" for tax credit investments and that the company was "evaluating the accounting for certain other matters." *Id*. ¶ 198 (emphasis removed). Then, on April 8, 2016, FNBC announced that "it would be forced to restate its consolidated financial statements for the fiscal years 2011, 2012, 2013, and 2014, together with interim quarterly periods during 2013, 2014, and 2015." *Id*. ¶ 54. FNBC's shareholders were "admonished that FNBC's quarterly and annual financial statements from 2011 through 2015 could no longer be relied on." *Id*. Plaintiff alleges that these disclosures showed that "results during FNBC's entire reporting history as a publicly traded company were a sham." *Id*. (emphasis removed).

**C.     FNBC Files for Bankruptcy.**

More than a year after FNBC's public disclosure of the need for restatement, on April 18, 2017, regulators from the FDIC and the Louisiana Office of Financial Institutions closed the Bank. Compl. ¶ 235. Three weeks later, on May 11, 2017, FNBC filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Louisiana. *Id.* ¶ 25.

**D.     The Creditors Committee Files This Action.**

On May 10, 2019, the Official Committee of Unsecured Creditors of First NBC Bank Holding Company ("Creditors Committee") filed this action raising claims against former officers of FNBC and against the EY Defendants. *See* Compl. ¶ 14. Plaintiff alleges that EY failed to

perform its audits properly and on that basis brings two claims: breach of contract against EY for alleged breach of duties set out in the parties' engagement agreements (Count V), and accounting malpractice and professional negligence against EY and the other EY Defendants (Count VI).

The counts against the EY Defendants are premised on allegations that EY did not conduct its audits in conformity with generally accepted auditing standards (GAAS). *See, e.g.*, Compl. ¶ 258. Plaintiff alleges that EY failed to "discover[] and inform[] FNBC" of material misstatements in the Company's accounting, material weaknesses in internal controls, and fraud by FNBC employees. *Id*. ¶ 309. Specifically, Plaintiff claims that EY "should have recognized and informed FNBC" that its financial statements violated generally accepted accounting principles (GAAP) in accounting for tax credit entities and loan loss reserves; that FNBC's internal controls were inadequate; and that FNBC employees were engaged in fraud. *Id*. ¶¶ 246–47, 309. Plaintiff alleges that EY failed to identify these problems in its audit reports issued on March 29, 2013, March 31, 2014, and March 31, 2015. *Id.* ¶ 242.[5]

The Complaint does not allege that Plaintiff complied with the Louisiana law requirement to submit its claims to a public accountant review panel prior to filing suit—nor, to our knowledge, has Plaintiff ever done so. Nor did Plaintiff obtain the EY Defendants' waiver of those requirements.

---

[5] Although ¶ 242 alleges that EY issued a report on August 25, 2016 with respect to the December 31, 2015 financial statements, we do not read that allegation as attempting to support a claim based solely upon the 2015 audit report. A premise of Plaintiff's Complaint is that the 2015 financial statements and audit report *disclosed* the principal accounting and internal control deficiencies that form the basis of Plaintiff's Complaint. *See, e.g.*, Compl. ¶¶ 129, 182, 206–16. Plaintiff alleges that they "represent[] the Auditor Defendants' admission that the prior audited financial statements . . . were materially misstated." *Id*. ¶ 194; *see also id*. ¶ 208 ("the Auditor Defendants should have identified these material deficiencies based on information available to it years earlier" and instead "issued unqualified opinions on FNBC's audited financial statements for FNBC's 2011, 2012, 2013, and 2014 years"); *id.* ¶ 216 (similar). In any event, any claims arising out of the 2015 audit must be arbitrated. *See infra* pp. 7–11.

5

**E.     The Creditors Committee's Demand for Arbitration.**

On May 10, 2019, the same day that it filed this action, but prior to this filing, Plaintiff (then the Creditors Committee) served a demand for arbitration of claims identical to those alleged in the Complaint "pursuant to the dispute resolution procedures contained in the engagement letters between EY and FNBC." Ex. B. In identifying the claims subject to arbitration, the demand letter attaches as "Exhibit A" a document that repeats almost *verbatim* the allegations of the Complaint against the EY Defendants.

**F.     Prior Proceedings and Stay.**

On August 6, 2019, the EY Defendants moved to compel arbitration of Plaintiff's claims asserted here and, in the alternative, to dismiss the Complaint. ECF No. 73. Shortly thereafter, on August 16, 2019, this case was stayed in light of pending criminal proceedings relating to FNBC. ECF No. 90. The stay Order dismissed without prejudice all then-pending motions, "reserving to the parties the right to re-urge any motion when the matter is re-opened." *Id*. at 9.

The criminal proceedings resulted in guilty pleas or convictions at trial of more than a dozen FNBC officers, employees, and Bank borrowers, including FNBC founder and CEO Ashton Ryan.[6] In the process, the criminal cases showed that EY was repeatedly lied to and provided false documentation while serving as FNBC's auditor.

---

[6] *See United States v. Ryan*, No. 2:20-cr-00065-EEF-KWR (E.D. La.) (four defendants); *United States v. Charity*, No. 2:19-cr-00090-LMA-JVM (E.D. La.); *United States v. St. Angelo*, No. 2:19-cr-00055-CJB-DPC (E.D. La.); *United States v. Gibbs*, No. 2:20-cr-00060-JTM-JVM (E.D. La.); *United States v. Dunlap*, No. 2:18-cr-00099-ILRL-JVM (E.D. La.); *United States v. Treme*, No. 2:20-cr-00062-DJP-DPC (E.D. La.); *United States v. Casse*, No. 2:19-cr-00147-CJB-MBN (E.D. La.); *United States v. Diaz*, No. 2:21-cr-00179-JTM-DPC (E.D. La.) (three defendants); *United States v. Vira*, No. 2:20-cr-00053-NJB-KWR (E.D. La.).

### G.     Lifting of Stay and the Trustee's Substitution as Plaintiff.

The stay of this case was lifted on June 12, 2023.  ECF No. 122.  Further, in light of the confirmation of FNBC's reorganization plan by the Bankruptcy Court, the Litigation and Distribution Trustee was substituted as Plaintiff here in place of the Creditors Committee.  *See id.*  A trustee asserting a claim belonging to the bankruptcy estate "is subject to all defenses available against the debtor, and must prove all elements that the debtor herself would be required to prove." *Stanley v. Trinchard*, 500 F.3d 411, 418 (5th Cir. 2007) (quoting *In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001)).  As Plaintiff has explained elsewhere, it (and its predecessor, the Creditors Committee) are "standing in the shoes of the Holding Company" in pursuing the claims here.[7]

### ARGUMENT

### I.      PLAINTIFF'S CLAIMS MUST BE ARBITRATED.

It is well-established that this Court has the authority and the obligation to enforce compliance with arbitration clauses.  The FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4; *see, e.g.*, *KPMG LLP v. Cocchi*, 565 U.S. 18 (2011) (per curiam).  The FAA expressly provides for a stay of the court action pending the arbitration.  9 U.S.C. § 3.  Here, the Court should stay the case with respect to the EY Defendants pending the arbitration of Plaintiff's claims.  This Court is not the proper venue for resolution of those claims.[8]

---

[7] ECF No. 111-1, at 26, *FDIC-R v. Ernst & Young LLP et al.*, No. 2:20-cv-01259-EEF-JVM (E.D. La. June 13, 2023).

[8] Plaintiff also failed to comply with the threshold contractual requirement to mediate any disputes with EY.  *See, e.g.*, Ex. A at 15.  However, this failure does not affect the Court's authority to compel arbitration. *See, e.g.*, *Chorley Enter., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 565 (4th Cir. 2015) (whether party "failed to satisfy the mediation condition precedent" is to be determined by "arbitrators—not courts").

1. Plaintiff has no legitimate argument that this dispute is not subject to arbitration. The parties are bound by agreements that contain arbitration clauses—and by suing on the agreements, Plaintiff judicially admits that these are valid and binding agreements—and the dispute is clearly within the scope of those arbitration clauses. *See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064–65 (5th Cir. 1998). FNBC and EY entered into agreements in connection with each audit challenged in the Complaint that expressly provide for arbitration. In particular, the agreements mandate that "any dispute or claim arising out of or relating to the Audit Services, this Agreement, or any other services provided by or on behalf of EY or any of its . . . agents . . . shall be resolved by mediation or arbitration as set forth in the attachment to this Agreement . . . ." Ex. A at ¶ 40 (2014 agreement); *see also* Ex. C at ¶ 30 (2012 agreement); Ex. D at ¶ 55 (2013 agreement); Ex. E at ¶ 40 (2015 agreement). Indeed, by asserting breach of contract claims here, Plaintiff has admitted both that it is bound to the provisions of the contracts containing the arbitration clause and that the contracts are enforceable. *See* Compl. ¶¶ 341–45; *see also id.* ¶ 16 ("EY provided its audit services to FNBC pursuant to contractual engagement letters"). And Plaintiff itself has invoked these very same arbitration provisions when it served the EY Defendants with its Notice of Arbitration the same day that it filed this action in this Court. *See* Ex. B.[9]

The FAA clearly requires enforcement of these binding arbitration clauses, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24–25 (1983), and courts here and around the nation routinely enforce arbitration clauses like those at issue here. *See, e.g., Lopez v. Cintas Corp.*, 47 F.4th 428, 431 (5th Cir. 2022) ("[C]ourts must 'rigorously enforce arbitration

---

[9] While the agreement was entered into between EY and FNBC, the arbitration clause requires arbitration of the claims against any of the EY "Auditor Does," as well. It specifically applies to "services provided by or on behalf of EY *or any of its . . . agents.*" Ex. A at ¶ 40 (2014 agreement) (emphasis added).

agreements according to their terms.'") (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)); *Lasseigne v. Sterling Jewelers, Inc.*, 2017 WL 1788292, at *4 (E.D. La. May 5, 2017) ("The Federal Arbitration Act ('FAA') provides that federal courts shall enforce arbitration agreements."); *Americas Ins. Co. v. Moreno*, 2015 WL 7458610, at *2–*3 (E.D. La. Nov. 24, 2015) (granting motion to compel arbitration, finding that an "all-encompassing arbitration provision" made clear that the parties intended to arbitrate their disputes); *Cleveland v. UBS Fin. Servs., Inc.*, 2011 WL 5870540, at *1–*2 (E.D. La. Nov. 22, 2011) (granting motion to compel arbitration, ruling that arbitration clause in financial services agreement was enforceable by PaineWebber's successor in interest, UBS).

2. Indeed, the Supreme Court has consistently held that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530, 533 (2012) (citations omitted); *see also KPMG LLP*, 565 U.S. at 21 (same); *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 729 (1996) (same); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (same). Courts interpreting the scope of an arbitration clause apply a "presumption of arbitrability" and compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation omitted); *see also Downer v. Siegel*, 489 F.3d 623, 626 (5th Cir. 2007) ("The weight of this presumption is heavy.") (quotation omitted). Simply put, "[a]rbitration is favored in the law." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000).

3. And, regardless, any question about the scope or applicability of the arbitration clause that Plaintiff may raise here is a question for the arbitrators, not this Court. The agreements

9

explicitly provide that "[a]ny issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of [the agreement's arbitration] procedures, shall be governed by the Federal Arbitration Act *and resolved by the arbitrators*." Ex. A at p. 15 (emphasis added); *see also* Ex. C at p. 9; Ex. D at p. 15; Ex. E at p. 15. Thus, the Court's role is even further limited here. So long as a valid arbitration agreement exists (as it indisputably does here), any dispute over arbitrability must be referred to the arbitrators. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527–28, 530 (2019).

This is because where, as here, "the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id*. at 528. That is the case even if the court believes that an attempt to apply an arbitration agreement to a particular dispute is "wholly groundless." *Id*. "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id.* at 530; *see also Pepe v. New York Life Ins. Co.*, 2023 WL 1814879, at *4 (E.D. La. Feb. 7, 2023) (when a contract "delegates the arbitrability question to an arbitrator, [the Court] may not override the contract") (quoting *Henry Schein*, 139 S. Ct. at 529); *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, 2020 WL 7342752, at *11 (E.D. La. Dec. 14, 2020) (same); *Exec. Strategies Corp. v. Sabre Indus. Inc*., 2020 WL 7213002, at *5 (W.D. La. Dec. 7, 2020) (same); *Childers v. Rent-A-Ctr. E., Inc*., 2021 WL 3286462, at *4 (E.D. La. Aug. 2, 2021) ("[E]ven when a court believes a provision delegating the 'arbitrability question' to an arbitrator to be 'wholly groundless,' the court must nevertheless honor the provision.") (quoting *Henry Schein*, 139 S. Ct. at 524).

In short, as Plaintiff has already implicitly recognized by serving its arbitration demand, the parties must proceed to arbitration of all claims Plaintiff asserts against the EY Defendants "in the manner provided for in [their] agreement." *See* 9 U.S.C. § 4.[10]

## II.     PLAINTIFF'S CLAIMS ARE TIME-BARRED.

In the alternative, if for some reason the claims against the EY Defendants are not sent to arbitration, Plaintiff's claims should be dismissed with prejudice because they are time-barred under Louisiana's statute of limitations for claims against accountants for two independent reasons. First, the claims expired even before FNBC filed for bankruptcy. Second, Plaintiff has failed to timely seek review of its claims by a public accountant review panel, as required by Louisiana law if the claims are in fact not arbitrable.

### A.     Louisiana's Limitations Periods Apply.

Louisiana law establishes a three-year peremptive period for claims against accountants: "in all events," actions for damages against an accountant "shall be filed at the latest within three years from the date of the alleged act, omission, or neglect," whether or not the plaintiff discovered the claim. La. R.S. § 9:5604A. Section 9:5604A also provides that a claim against an accountant is barred if not brought within one year "from the date that the alleged act, omission, or neglect, is discovered or should have been discovered."

These provisions control here. Indeed, Section 9:5604C further provides that "[n]otwithstanding any other law to the contrary, in all actions brought in this state against any accountant duly licensed under the laws of this state, . . . whether based on tort or breach of contract or otherwise arising out of an engagement to provide professional accounting service, *the*

---

[10] Under Section 4 of the FAA, the arbitration must take place in the Eastern District of Louisiana. *See* 9 U.S.C. § 4 ("The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.").

11

*prescriptive and peremptive period shall be governed exclusively by this Section and the scope of the accountant's duty to clients and nonclients shall be determined exclusively by applicable Louisiana rules of law, regardless of the domicile of the parties involved*." (Emphasis added); *see also Deloitte Tax LLP v. Amedisys, Inc.*, 2018 WL 2540437, at *16 (La. App. 1 Cir. May 16, 2018) (public policy favors use of Louisiana law in claims against accountants given Louisiana's interest in the application of such law to accountants performing services in the state).

### B. Plaintiff's Claims Are Barred Based on the Allegations of the Complaint.

The allegations of the Complaint establish that Plaintiff's claims expired prior to FNBC's bankruptcy. Plaintiff's claims with respect to audit years 2013 and earlier are thus perempted by Louisiana's three-year statute of repose. La. R.S. § 9:5604A. And Plaintiff's claims against the EY Defendants with respect to the 2014 audit year (and earlier years) are barred by Louisiana's one-year "discovery" statute of limitations for claims against accountants. *Id*.

### 1. Louisiana's Three-Year Statute of Repose Bars Plaintiff's Claims for Audit Years 2013 and Earlier.

To begin, Plaintiff's claims relating to audit years 2013 and earlier are barred by Louisiana's three-year statute of repose.

FNBC filed its Chapter 11 bankruptcy petition on May 11, 2017, Compl. ¶ 240, and Plaintiff filed its Complaint on May 10, 2019. The filing of a Chapter 11 petition tolls for a period of time any statute of limitations that has not already expired. 11 U.S.C. § 108(a) ("If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, *and such period has not expired before the date of the filing of the petition*, the trustee may commence such action only before the later of (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.") (emphasis added). If a

12

statute of limitations has expired before the filing of the Chapter 11 petition, however, filing the petition does not reinstate the time-barred claim. *Id.*; *see also, e.g.*, *Adler v. Bell*, 2007 WL 9723604, at *3 (E.D. La. Mar. 27, 2007) (Lemmon, J.) (dismissing trustee's medical malpractice claim on behalf of debtor because Louisiana limitations period expired before debtor filed for bankruptcy).

Accordingly, under Louisiana's three-year statute of repose, any claims based on EY's audit reports issued more than three years before May 11, 2017 are time-barred. La. R.S. § 9:5604A; *see, e.g.*, *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 676 (5th Cir. 2018) (enforcing statute of repose to dismiss claim against accounting firm); *T&T Inv. Corp. v. Watkins, APC CPA*, 2021 WL 6298683, at *1 (La. App. 1 Cir. Dec. 30, 2021) (same); *Bernard, Cassisa, Elliott & Davis v. Laporte*, 12-758, p. 5 (La. App. 5 Cir. 3/27/13), 113 So. 3d 397, 400 ("Because the rights to which peremptive periods attach are extinguished after the passage of a specified period of time, nothing may interfere with the running of a peremptive period.").

Here, the Complaint alleges that EY breached its engagement contract with FNBC and committed professional malpractice with respect to its audits for FNBC for the years ending December 31, 2011 through December 31, 2014.[11] Those claims arose when EY issued the allegedly deficient audit reports dated March 29, 2013, March 31, 2014, and March 31, 2015. *See* Compl. ¶ 242. In particular, EY's audit report for 2012 (dated March 29, 2013) was included in

---

[11] As noted earlier, it does not appear that Plaintiff is asserting a claim based upon the 2015 audit report. And, regardless, Plaintiff could not plausibly do so. As explained earlier, a premise of Plaintiff's Complaint is that the 2015 financial statements and audit report disclosed the principal accounting and internal control deficiencies that form the basis of Plaintiff's Complaint. *See supra* note 5. Moreover, all of the FNBC capital contributions to the Bank that Plaintiff complains about were made *before* the issuance of the 2015 audit report. *See* Compl. ¶¶ 90–91, 312. In short, Plaintiff has not stated a plausible claim with respect to the August 26, 2016 audit report. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

FNBC's Form S-1 registration statement filed on April 8, 2013—more than three years before the filing of the Chapter 11 petition. *Id.* ¶¶ 242, 265. And EY's report for 2013 was included in FNBC's Form 10-K filed March 31, 2014—also more than three years before the petition was filed. *Id* ¶¶ 110, 242.[12]

In short, all of Plaintiff's claims against the EY Defendants for the 2012 and 2013 audits (and all interim and prior periods) and for EY's audit work for 2011 and 2012 (and prior years) are time-barred by operation of Louisiana's statute of repose. They expired before FNBC ever filed for bankruptcy.

### 2. Plaintiff's Claims with Respect to the 2014 Audit Are Barred by Louisiana's One-Year Statute of Limitations.

In addition to the three-year statute of repose, a claim against an accountant is barred if not brought within one year "from the date that the alleged act, omission, or neglect is discovered or should have been discovered," meaning within one year of when "a reasonable man . . . has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them." *Jenkins v. Starns*, 11-1170, pp. 14–15, 21 (La. 1/24/12), 85 So. 3d 612, 620–21, 624 (quotations omitted) (construing identical language in case involving claim of legal malpractice).[13] Plaintiff's claims with respect to the 2014 audit are barred by this one-year statute of limitations because they, too, expired before FNBC declared bankruptcy.

Knowledge that would "excite attention and put the injured party on guard and call for inquiry" is sufficient to start the clock, and a plaintiff is assumed to have "knowledge or notice of

---

[12] Likewise, to the extent relevant, EY's report included in FNBC's Form S-1 relating to the years 2011 and 2012 was filed on November 9, 2012—more than three years before the filing of the Chapter 11 petition. *See* Compl. ¶¶ 42, 256.

[13] *Compare* La. R.S. § 9:5604A (Actions for professional accounting liability), *with id.* § 9:5605A (Actions for legal malpractice).

14

everything to which a reasonable inquiry may lead." *Verbois v. Taylor*, 15-0240, p. 6 (La. App. 1 Cir. 12/17/15), 185 So. 3d 59, 62. That is, a plaintiff "is deemed to have constructive knowledge" of information that he could by reasonable diligence have learned, starting from the moment he "has information sufficient to excite attention and prompt further inquiry." *Williams v. Pioneer Fishing & Rental Tools, Inc.*, 06-1049, p. 3 (La. App. 3 Cir. 12/20/06), 945 So. 2d 936, 938 (applying § 9:5604).

Here, the knowledge that started Plaintiff's one-year limitations clock appeared in FNBC's own public filings, as recounted in and characterized by Plaintiff's own allegations. Having stepped into FNBC's shoes for purposes of this suit, Plaintiff cannot be heard to deny knowledge of those filings. Specifically, the Complaint itself makes clear that FNBC knew about its potential claims against the EY Defendants more than a year before the May 11, 2017 filing of FNBC's Chapter 11 petition.

The Complaint's own allegations maintain that FNBC's improper accounting was revealed through "a series of disclosures beginning in early 2016," in which "the false story" of FNBC's accounting "began to unravel." Compl. ¶¶ 159, 193; *see id.* ¶ 169. First, in February 2016, FNBC issued press releases disclosing (among other things) increased exposure to oil and gas loans and, according to Plaintiff, how "improper accounting for, and failure to maintain internal controls over, tax credit investments had adversely affected its true net income." *Id.* ¶ 196; *see id.* ¶¶ 193–197. Then, on March 16, 2016, FNBC filed a notice with the SEC that FNBC's 2015 Form 10-K would be delayed because, among other reasons, FNBC had "identified errors in its accounting" for its federal and state tax historical rehabilitation tax credit entities and was evaluating its accounting for certain other matters. *Id.* ¶ 198. Finally, three weeks later, on April 8, 2016, "FNBC filed a Form 8-K and press release with the SEC disclosing that FNBC's audit committee and

15

management had determined that FNBC's consolidated financial statements for the years ended December 31, 2014, 2013, 2012, and 2011, as well as each of the interim periods within the years ended December 31, 2015, 2014, and 2013, *should no longer be relied upon*." *Id.* ¶ 199 (emphasis added); *see also id.* ¶ 54. According to Plaintiff, this disclosure showed that the "*results during FNBC's entire reporting history as a publicly traded company were a sham.*" *Id.* ¶ 54 (emphasis altered).

FNBC's own public assessment plainly was "sufficient to excite attention and prompt further inquiry," *Williams*, 06-1049, p. 3, 945 So. 2d at 938, with respect to EY's audit reports for each of those years, had the company been interested in pursuing claims. By April 2016, Plaintiff asserts that the Company's accounting was known to be a "sham." Compl. ¶ 54. But FNBC did not file a lawsuit, a demand for arbitration (or any other claim) against the EY Defendants within a year. The one-year limitations period expired no later than April 8, 2017—a month before the filing of the Chapter 11 petition. As a result, all of Plaintiff's claims against the EY Defendants with respect to FNBC's 2014 financial statements are barred under Louisiana's one-year statute of limitations.[14]

### C. Plaintiff's Claims Should Be Dismissed Because It Failed to Timely Submit the Dispute to the Public Accountant Review Panel.

Plaintiff's claims also must be dismissed with prejudice if they are not sent to arbitration because they are additionally barred due to Plaintiff's failure to timely comply with Louisiana law's mandatory review panel process for claims against accountants that are brought in *court* and not arbitrated. In other words, Plaintiff should be required to arbitrate this dispute, but if arbitration

---

[14] Since the claims with respect to 2014 are time-barred by the one-year limitations period, it follows that claims against the EY Defendants for earlier periods are barred for these reasons, too.

is not compelled then Plaintiff's failure to comply with the mandatory review panel requirement of Louisiana law requires dismissal of the claims with prejudice.

Under the Louisiana Accountancy Act, "[a]ll claims against certified public accountants or firms" that are not submitted to arbitration "shall be reviewed by a public accountant review panel." La. R.S. § 37:102A. "[N]o action against a certified public accountant or firm . . . may be commenced in any court before the claimant's request for review has been presented to a public accountant review panel . . . and the panel has issued a written opinion." *Id.* § 37:105A. Compliance with this pre-suit requirement "is not to be deemed optional." *Id.*

In short, "Louisiana law is clear": absent a written agreement to waive the statutory requirement, a "[p]laintiff[] cannot bring a malpractice claim [in court] before submitting [its] claim to an accountant review panel." *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 676 (5th Cir. 2018); *see also Bickerstaff v. Bickerstaff*, 226 F. Supp. 3d 652, 658 (E.D. La. 2016) (dismissing complaint pursuant to FRCP 12(b)(6) for failure to comply with the panel review requirement); *Barrack Children's Irrevocable Tr. v. Pailet*, 2012 WL 2513682, at *2 (E.D. La. June 27, 2012) (same).

Here, Plaintiff never submitted its claims against the EY Defendants to an accountant review panel, nor obtained a waiver of the requirement from the EY Defendants. Because Plaintiff failed to satisfy this mandatory pre-suit requirement, the Complaint must be dismissed as premature.

Moreover, that dismissal must be with prejudice because the deficiency cannot be cured at this point. The Louisiana Accountancy Act mandates that a claimant seek panel review "within the time limitations provided for in R.S. 9:5604." La. R.S. § 37:102B. Those "time limitations provided for in R.S. 9:5604" are the same time limits for claims against accountants discussed

17

above—the three-year statute of repose and one-year discovery period. And, as demonstrated above, those time limits expired even before FNBC declared bankruptcy in May 2017. *See supra* pp. 11–16. But, regardless, the time limits certainly have expired by now—more than six additional years later in June 2023.[15] Never in all of those years did Plaintiff seek panel review as required by Louisiana law, and Plaintiff is out of time to do so now. Plaintiff clearly failed to seek review "within the time limitations provided for in R.S. 9:5604." La. R.S. § 37:102B.

It is irrelevant that Plaintiff filed suit. The question is whether Plaintiff *sought panel review* "within the time limitations provided for in R.S. 9:5604." *Id.* The Fifth Circuit's decision in *Firefighters' Retirement System v. Grant Thornton, L.L.P.*, 894 F.3d 665, is directly on point. In that case, plaintiffs brought accounting malpractice claims in court, but "waited more than three more years before filing their first request for panel review." *Id.* at 676. Because the request for panel review fell outside the limitations period, the court held that the plaintiffs' claims were "extinguished," and thus the claims "must be dismissed *with* prejudice." *Id.* Likewise, in *Bernard, Cassisa, Elliott & Davis v. Laporte*, 12-758, 113 So. 3d 397, the Louisiana Fifth Circuit Court of Appeal affirmed the dismissal of a plaintiff's claim with prejudice where it failed to timely file a request for review, holding that the filing of a claim in court within the statute of limitations period "had no effect." 12-758, p. 7, 113 So. 3d at 401. The court explained: "Only the timely filing of a written request for review under La. R.S. 37:105 prevents preemption." *Id.*

There is no reason for a different result here. Plaintiff cannot cure its failure, so "further proceedings would be futile." *Grant Thornton*, 894 F.3d at 672. Unless arbitration is compelled, the Court should dismiss this case with prejudice.

---

[15] To the extent applicable, this would include the two-year period provided under federal law to bring claims after filing a bankruptcy petition. *See* 11 U.S.C. §§ 108, 301. Because Plaintiff filed a voluntary petition for relief on May 11, 2017, it was required to seek panel review no later than May 11, 2019.

18

## CONCLUSION

Plaintiff's claims against the EY Defendants should be compelled to arbitration in this District. In the alternative, in the event that arbitration is not compelled, the claims should be dismissed with prejudice under Rule 12(b)(6).

Dated: June 28, 2023

Respectfully submitted,

/s/ Craig Isenberg
Craig Isenberg, 26903
Christine M. Calogero, 36818
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701
cisenberg@barrassousdin.com
ccalogero@barrassousdin.com

Steven M. Farina, *pro hac vice*
Stephen J. Fuzesi, *pro hac vice*
Adrienne E. Van Winkle, *pro hac vice*
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
sfarina@wc.com
sfuzesi@wc.com
avanwinkle@wc.com

Stanley J. Parzen, *pro hac vice*
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
sparzen@mayerbrown.com

*Attorneys for Ernst & Young LLP*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing has been filed using this Court's ECF procedure, which will send electronic noticing to all counsel of record this 28th day of June, 2023.

                                      */s/ Craig Isenberg*